1   LATHAM & WATKINS LLP
    Mark S. Mester (pro hac vice)
2    *mark.mester@lw.com*
    Kathleen Lally (pro hac vice)
3    *kathleen.lally@lw.com*
    330 North Wabash Avenue, Suite 2800
4   Chicago, Illinois 60611
    Telephone: (312) 876-7700
5   Facsimile: (312) 993-9767

6   Matthew Rawlinson (SBN 231890)
     *matt.rawlinson@lw.com*
7   Arman Zahoory (SBN 306421)
     *arman.zahoory@lw.com*
8   140 Scott Drive
    Menlo Park, California 94025
9   Telephone: (650) 328-4600
    Facsimile: (650) 463-2600

10
    Michael H. Rubin (SBN 214636)
11   *michael.rubin@lw.com*
    Melanie M. Blunschi (SBN 234264)
12   *melanie.blunschi@lw.com*
    Grant E. Strother (SBN 284612)
13   *grant.strother@lw.com*
    505 Montgomery Street, Suite 2000
14  San Francisco, California 94111
    Telephone: (415) 391-0600
15  Facsimile: (415) 395-8095

16  *Attorneys for Defendant Apple Inc.*

17             **UNITED STATES DISTRICT COURT**

18            **NORTHERN DISTRICT OF CALIFORNIA**

19                    **SAN JOSE DIVISION**

20                                          Master Docket No. 5:18-CV-00147-EJD

21                                          **DEFENDANT APPLE INC.'S NOTICE
                                            OF MOTION AND MOTION TO**
22                                          **DISMISS PLAINTIFFS' SECOND
                                            CONSOLIDATED AMENDED**
23  IN RE APPLE PROCESSOR LITIGATION        **COMPLAINT; MEMORANDUM OF
                                            POINTS AND AUTHORITIES IN**
24                                          **SUPPORT THEREOF**

25                                          Date:   June 6, 2019
                                            Time:   9:00 a.m.
26                                          Place:  Courtroom 4, 5th Floor
                                            Judge:  Hon. Edward J. Davila
27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

## NOTICE OF MOTION AND MOTION

2     TO THIS HONORABLE COURT, THE PARTIES AND THEIR ATTORNEYS OF

3 RECORD, PLEASE TAKE NOTICE THAT on June 6, 2019, at 9:00 a.m. in Courtroom 4 of the

4 United States District Court for the Northern District of California, San Jose Division, located at

5 280 S. 1st Street, San Jose, California, Defendant Apple Inc. ("Apple") will and hereby does move

6 to dismiss with prejudice all claims brought by Plaintiffs Jennifer Abrams, Anthony Bartling,

7 Robert Giraldi, and Jacqueline N. Olson in the Second Consolidated Amended Complaint. This

8 motion is supported by the attached Memorandum of Points and Authorities and by the Declaration

9 of Grant E. Strother and the Request for Judicial Notice and Incorporation by Reference filed

10 herewith.

11     Apple respectfully submits this motion under Federal Rules of Civil Procedure 12(b)(1),

12 12(b)(6), 8(a), and 9(b) on the grounds that Plaintiffs do not allege sufficient facts to establish

13 standing or state a claim for any cause of action. Plaintiffs have had ample opportunity to

14 adequately plead their case, including in response to the Court's order dismissing the Consolidated

15 Amended Complaint. The Second Consolidated Amended Complaint should therefore be

16 dismissed with prejudice.

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2

**Page**

3    I.   INTRODUCTION AND ISSUES TO BE DECIDED ..................................................... 1

4    II.  FACTUAL BACKGROUND ............................................................................................ 2

5         A.   The Apple Products At Issue .............................................................................. 2

6         B.   The "Spectre" And "Meltdown" Vulnerabilities ............................................... 3

7         C.   The Mitigation And Disclosure Of Spectre And Meltdown .............................. 4

8         D.   Lawsuits Based On Spectre And Meltdown ....................................................... 5

9              1.   Plaintiffs' Original Consolidated Complaint .......................................... 5

10             2.   Plaintiffs' Second Consolidated Amended Complaint ........................... 6

11   III. DISCUSSION .................................................................................................................... 6

12        A.   Plaintiffs Still Have Not Established Article III Standing ................................. 6

13             1.   Plaintiffs Have Not Addressed The Standing Defects
                       Identified By The Court In The Dismissal Order ................................... 7

14

15                  a.   Plaintiffs' New Allegations About Performance
                             Testing Do Not Support A Concrete, Particularized
16                           Injury-In-Fact .............................................................. 7

17                  b.   Plaintiffs Have Not Pled Facts Demonstrating An
                             Injury-In-Fact Based On Overpayment Or
18                           Diminution In Value ................................................... 10

19             2.   Plaintiffs Cannot Plead An Injury-In-Fact Based On Design
                       Choices That Are Not Product Defects ................................................. 12

20        B.   Plaintiffs Have Not Stated Any Claim ............................................................. 14

21             1.   Plaintiffs Have Not Stated A Fraud Claim ........................................... 14

22                  a.   Plaintiffs Have Not Alleged An Affirmative
                             Misrepresentation .......................................................... 14
23
                    b.   Plaintiffs Have Not Alleged An Actionable
24                           Omission ......................................................................... 15

25                           i.   Plaintiffs Have Not Alleged Any Fact That
                                      Apple Knew And Should Have Disclosed
26                                    Prior To June 2017 .......................................... 16

27                           ii.  Apple Had No Duty To Disclose The
                                      Vulnerabilities Earlier Than It Did ................. 18

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

ii

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

1        c.    Apple's Public Statements Regarding

2               Vulnerabilities And Software Updates Undermine

               Any Claim Of Deception ........................................................... 19

3        d.    Plaintiffs Have Not Alleged Reliance ........................................... 20

4        e.    Plaintiffs Have Not Alleged Damages .......................................... 23

5     2.    Plaintiffs Have Not Stated An Unfair Competition Claim ..................... 24

6     3.    Plaintiffs Have Not Stated An Unjust Enrichment Claim ....................... 25

7  IV.     CONCLUSION............................................................................................ 25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Anderson v. Hyundai*,
5
    2014 WL 12579305 (C.D. Cal. 2014)....................................................................23

6

*In re Apple Inc. Device Performance Litig.*,
    347 F. Supp. 3d 434 (N.D. Cal. 2018) .......................................... *passim*
7

*Ashcroft v. Iqbal*,
8
    556 U.S. 662 (2009)....................................................................................14

9

*Augustine v. FIA Card Servs.*,
10
    485 F. Supp. 2d 1172 (E.D. Cal. 2007)....................................................19

11

*Azadpour v. Sun Microsystems, Inc.*,
    2007 WL 2141079 (N.D. Cal. 2007) ..........................................................9
12

*Azoulai v. BMW*,
13
    2017 WL 1354781 (N.D. Cal. 2017) ...................................................13, 25

14

*Baltazar v. Apple*,
15
    2011 WL 6747884 (N.D. Cal. 2011) ........................................................15

16

*Bardin v. DaimlerChrysler*,
    39 Cal. Rptr. 3d 634 (Ct. App. 2006).......................................................25
17

*Bell Atl. v. Twombly*,
18
    550 U.S. 544 (2007)....................................................................................14

19

*Berenblat v. Apple*,
20
    2009 WL 2591366 (N.D. Cal. 2009) ........................................................25

21

*Bildstein v. MasterCard*,
    329 F. Supp. 2d 410 (S.D.N.Y. 2004).......................................................20
22

*Birdsong v. Apple*,
23
    590 F.3d 955 (9th Cir. 2009) ........................................................7, 11, 13

24

*Boysen v. Walgreen*,
25
    2012 WL 2953069 (N.D. Cal. 2012) ..................................................12, 13

26

*Brace v. Rite Aid*,
    2011 WL 635299 (D.N.H. 2011)........................................................16, 20
27

*Cahen v. Toyota*,
28
    147 F. Supp. 3d 955 (N.D. Cal. 2015) ..........................................11, 23, 24

LATHAM&WATKINS‌LLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

*Cahen v. Toyota*,
   717 F. App'x 720 (9th Cir. 2017) ........................................................................12

*Colman v. Theranos*,
   2018 WL 2463097 (N.D. Cal. 2018) ............................................................21, 22

*Ferranti v. Hewlett-Packard*,
   2015 WL 5302674 (N.D. Cal. 2015) ............................................................18, 19

*Gautschi v. Auto Body Disc. Ctr.*,
   660 A.2d 1076 (N.H. 1995) ..............................................................................21

*Gold v. Lumber Liquidators*,
   2015 WL 7888906 (N.D. Cal. 2015) ...................................................................14

*Gomez v. Carmax Auto Superstores California*,
   2015 WL 350219 (C.D. Cal. 2015).....................................................................16

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..............................................................24

*Hall v. Sea World*,
   2015 WL 9659911 (S.D. Cal. 2015) ................................................20, 21, 22, 24

*Haskins v. Symantec*,
   2014 WL 2450996 (N.D. Cal. 2014), *aff'd*, 654 F. App'x 338 (9th Cir. 2016) .....................22

*Hauck v. Advanced Micro Devices*,
   2018 WL 5729234 (N.D. Cal. 2018) ................................................14, 15, 16, 17

*Herne v. Cooper Indus.*,
   2005 WL 2671540 (D.N.H. 2005) ......................................................................14

*Herremans v. BMW*,
   2014 WL 5017843 (C.D. Cal. 2014).............................................................18, 19

*Hodges v. Apple*,
   2013 WL 6698762 (N.D. Cal. 2013) ...................................................................18

*In re iPhone 4S Consumer Litig.*,
   2014 WL 589388 (N.D. Cal. 2014) ....................................................................15

*Kane v. Chobani*,
   2013 WL 5289253 (N.D. Cal. 2013) .....................................................................8

*Kearns v. Ford*,
   567 F.3d 1120 (9th Cir. 2009) ..........................................................................14

*Larin v. Bank of Am.*,
   617 F. App'x 651 (9th Cir. 2015) ......................................................................19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

v

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

*Lassen v. Nissan*,
    211 F. Supp. 3d 1267 (C.D. Cal. 2016) ...............................................................12, 13, 15, 25

*Leider v. Ralfe*,
    387 F. Supp. 2d 283 (S.D.N.Y. 2005).................................................................................16

*In re Lenovo Adware Litig.*,
    2016 WL 6277245 (N.D. Cal. 2016) .....................................................................................8

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (Cal. Ct. App. 1997) .........................................................................19

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...............................................................................................................9

*Marcus v. Apple*,
    2015 WL 151489 (N.D. Cal. 2015) .....................................................................................25

*Marolda v. Symantec*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................................................21

*Missaghi v. Apple*,
    2013 WL 12203021 (C.D. Cal. 2013)..............................................................................8, 25

*Moore v. Apple*,
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) ................................................................................24

*Mount v. PulsePoint*,
    2016 WL 5080131 (S.D.N.Y. 2016), *aff'd*, 684 F. App'x 32 (2d Cir. 2017), a*s*
    amended* (May 3, 2017) .........................................................................................................8

*In re Myford Touch.*,
    2016 WL 6873453 (N.D. Cal. 2016) ...................................................................................21

*Oestreicher v. Alienware*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ..........................................................................14, 15

*Ono v. Head Racquet Sports*,
    2016 WL 6647949 (C.D. Cal. 2016).....................................................................................22

*Peerless Wall & Window Coverings v. Synchronics*,
    85 F. Supp. 2d 519 (W.D. Pa. 2000), *aff'd*, 234 F.3d 1265 (3d Cir. 2000) ............................23

*Punian v. Gillette*,
    2015 WL 4967535 (N.D. Cal. 2015) ...................................................................................16

*Punian v. Gillette*,
    2016 WL 1029607 (N.D. Cal. 2016) ...................................................................................19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

vi

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

*Rasmussen v. Apple*,
  27 F. Supp. 3d 1027 (N.D. Cal. 2014) ...................................................................................14

*Richter v. CC-Palo Alto*,
  176 F. Supp. 3d 877 (N.D. Cal. 2016) ...................................................................................12

*Sciacca v. Apple*,
  2019 WL 331280 (N.D. Cal. 2019) ........................................................................................15

*Silveira v. Lockyer*,
  312 F.3d 1052 (9th Cir. 2002*), as amended* (Jan. 27, 2003), *abrogated on
  other grounds by Dist. of Columbia v. Heller*, 554 U.S. 570 (2008)......................................12

*Smit v. Charles Schwab*
  2011 WL 846697 (N.D. Cal. 2011) ........................................................................................25

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014), *order corrected*, 2014 WL 12603117
  (S.D. Cal. 2014) .....................................................................................................................23

*Spokeo v. Robins*,
  136 S. Ct. 1540 (2016)..............................................................................................................7

*Steckman v. Hart Brewing*,
  143 F.3d 1293 (9th Cir. 1998) ................................................................................................18

*Tae Hee Lee v. Toyota*,
  992 F. Supp. 2d 962 (C.D. Cal. 2014) ...................................................................................23

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ............................................................................................................24

*Varadarajan v. U.S. Cricket Ass'n*,
  2012 WL 1252783 (N.D. Cal. 2012) ......................................................................................11

*Vess v. Ciba-Geigy*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................................................14

*Wescott v. Bushnell*,
  2018 WL 3069474 (N.D. Cal. 2018) .........................................................................................6

*Williams v. Yamaha*,
  851 F.3d 1015 (9th Cir. 2017) ................................................................................................18

*Williamson v. Apple*,
  2012 WL 3835104 (N.D. Cal. 2012) .................................................................................15, 18

*Wilson v. Hewlett Packard*,
  668 F.3d 1136 (9th Cir. 2012) ...........................................................................................16, 18

*Wofford v. Apple*,
     2011 WL 5445054 (S.D. Cal. 2011) .......................................................................24

*Yastrab v. Apple*,
     173 F. Supp. 3d 972 (N.D. Cal. 2016) ........................................................14, 15, 21

*Yunker v. Pandora Media*,
     2013 WL 1282980 (N.D. Cal. 2013) ...............................................................8, 23

**STATUTES**

Cal. Bus. & Prof Code § 17200 ...........................................................................24

Cal. Civ. Code § 1760 ..........................................................................................20

**RULES**

Fed. R. Civ. P. 9(b) .......................................................................................14, 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

viii

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

1     <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2  **I.**     **INTRODUCTION AND ISSUES TO BE DECIDED**

3        Plaintiffs' Second Consolidated Amended Complaint should be dismissed with prejudice

4 because the revised pleading (1) does not cure Plaintiffs' prior failure to allege a concrete,

5 particularized injury sufficient to establish Article III standing, as the Court required when

6 dismissing Plaintiffs' prior complaint (Dkt. 66, "MTD Order"), and (2) fails to state a claim because

7 Plaintiffs have not adequately alleged a misrepresentation, omission, reliance or damages.

8        Plaintiffs have had every opportunity—and the benefit of substantial guidance from the

9 Court—to sufficiently plead standing. But despite extensive briefing, a two-hour hearing, detailed

10 guidance in the MTD Order, and apparent consultations with technical and economic experts,

11 Plaintiffs are unwilling or unable to offer any facts demonstrating "that they ***personally*** have been

12 injured, not that injury has been suffered by other, unidentified members of the class." MTD Order

13 at 4 (emphasis added). As the Court is aware, Plaintiffs base their claims on two computer security

14 vulnerabilities that "apply to ***all*** modern processors and affect ***nearly all*** computing devices and

15 operating systems" and that have ***never*** been exploited. *Id.* at 2 (emphasis added). Plaintiffs do not

16 allege that they personally observed any performance issues with their iDevices, suffered a penny

17 of out-of-pocket losses, or experienced an attack related to the vulnerabilities.

18        As before, Plaintiffs have, at best, alleged facts "support[ing] an inference that some users,

19 ***not most and certainly not all users***, experienced slower performance in their iDevices." *Id.* at 8

20 (emphasis added). Plaintiffs disavow the performance tests they relied on in their prior pleading

21 and now ask the Court to infer a universal injury from a new alleged performance test—this time

22 on a single iPhone 7, running an unspecified version of Apple's operating system. The tested

23 device is not alleged to belong to any named Plaintiff, and Plaintiffs offer no basis to extrapolate

24 the results to the numerous other iDevices at issue, including more than a dozen different iPhone

25 models, as well as iPads, iPods, and Apple TVs, many of which do not even offer the same features

26 Plaintiffs purport to have tested.

27        Plaintiffs' description of a "regression analysis" (which is not attached to the amended

28 complaint) regarding average sale prices for four types of used iPhones is no more capable of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

1    establishing that Plaintiffs personally experienced a concrete, particularized injury. Even setting

2    aside the weaknesses on the face of the purported analysis—including that Plaintiffs offer no

3    meaningful way to compare the alleged price decline to other makers' phones and do not claim to

4    have taken into account the effect of Apple's release of a new model of iPhone around the time of

5    the decline—the regression does not "show their iDevices are worth less than what they paid for

6    them." *Id.* at 8. The regression sheds no light on what Plaintiffs would have paid for their iDevices

7    years earlier and it is just as incapable of being extrapolated to other iPhones, iPads, iPods, and

8    AppleTVs as Plaintiffs' deficient performance test results. Nor can the secondary market's alleged

9    reaction to news reports of potential problems stand in for the concrete injuries—*e.g.*, exploited

10   vulnerabilities or actual performance degradation—missing from their allegations. Plaintiffs'

11   continued failure to plead standing demands dismissal with prejudice.

12   Even if Plaintiffs could plead standing, Plaintiffs fail to state a claim upon which relief can

13   be granted. First, Plaintiffs do not identify any statement by Apple promising that its devices are

14   immune to newly discovered security vulnerabilities, or that efforts to mitigate vulnerabilities

15   would never involve trade-offs. Second, Plaintiffs also do not identify any representation by Apple

16   that iDevices would meet specific performance or security metrics, much less a performance or

17   security standard that any of Plaintiffs' iDevices failed to meet. Third, Plaintiffs do not identify

18   any duty on Apple's part to disclose the vulnerabilities any earlier than it did, either before Apple

19   knew about them or between Apple's learning of the vulnerabilities and its release of software

20   patches to prevent bad actors from exploiting them. Fourth, Plaintiffs do not plead reliance on the

21   generic, inactionable statements they allege. Fifth, Plaintiffs fail to plead any damages.

22   For these reasons and more, the Court should dismiss Plaintiffs' claims with prejudice.

23   **II.     FACTUAL BACKGROUND**

24   **A.     The Apple Products At Issue**

25   Plaintiffs seek to represent a class of purchasers and lessees of iPhones, iPads, iPods, and

26   Apple TVs ("iDevices") that contain a dozen different central processing units ("CPUs"). *See* ¶ 1.[1]

27

28   [1] This includes 15 models of iPhones, 16 models of iPads (including devices from the iPad Mini and iPad Pro lines), three models of iPods, and five models of Apple TVs. Unless otherwise specified, paragraph numbers refer to paragraphs in the SCAC.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

1    Apple has designed its own CPUs for certain devices since 2010, but other devices include Intel
2    chips; only devices with Apple chips are at issue in this case, while Apple and other products with
3    Intel chips affected by the same vulnerabilities are at issue in *In re: Intel Corp. CPU Mktg. Sales*
4    *Practices and Prods. Liab. Litig.*, No. 3:18-md-02828-SI (D. Or.). *See id.* ¶ 43.

5           Each iDevice includes both hardware (*i.e.*, the physical product) and software (*i.e.*, the iOS
6    or tvOS operating system and applications on the device). *See* Ex. A at 1-2.[2] Apple's Software
7    License informs consumers that software is provided on an "'as is' and as 'available'" basis "with
8    all faults and without warranty of any kind," Ex. B at 6 § 7.3, and that updates and other downloads,
9    "if any, may not . . . include all existing software features . . . ." *id.* at 1 § 1(b).

10          **B.      The "Spectre" And "Meltdown" Vulnerabilities**

11          Plaintiffs' claims focus on two security vulnerabilities nicknamed "Spectre" and
12   "Meltdown" and Apple's efforts to remedy them. Spectre and Meltdown are two of the scores of
13   vulnerabilities that the computing industry identifies and addresses each year. *See*, *e.g.*, Ex. C at
14   3-14; Ex. D at 33. As the federally funded Computer Emergency Response Team ("CERT")
15   Coordination Center has noted, "nearly all software-centric products contain [security]
16   vulnerabilities," and "the potential for [such] vulnerabilities will likely never go away since a
17   previously secure system can become vulnerable when deployed into a new context" or "due to
18   environmental changes or the development of novel attack techniques." Ex. D at 33.

19          Plaintiffs allege that Spectre and Meltdown arise out of two pervasive processor
20   "optimization techniques—(1) 'speculative execution' and (2) 'out-of-order execution.'" ¶ 30.
21   These "techniques" can allow a processor to operate more quickly by preemptively completing
22   actions based on an educated guess about what a user might do next, and by reordering actions in
23   a more efficient way. *See generally* ¶ 31. Unfortunately, the vulnerabilities meant that, in some
24   circumstances, it was theoretically possible for a bad actor to access certain preemptively retrieved
25   data or to otherwise glean information from the timing of processor actions. ¶ 32.

26   _____

27   [2] All "Ex." references are to the exhibits to the Declaration of Grant E. Strother filed herewith. The
     materials cited are referenced here for background; Apple's motion to dismiss ("Motion") does
     not depend on these materials, and the Court does not need to make factual determinations to
28   resolve this Motion, as Plaintiffs' claims fail as a matter of law.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

The computer industry first learned of Spectre and Meltdown in mid-2017. Google Project Zero—a full-time team of security researchers tasked with finding "zero-day," *i.e.*, previously unknown, vulnerabilities—devised proofs of concept.[3] *See* Ex. F at 1, 6; Ex. G at 7. Spectre and Meltdown affect "all modern processors and affect nearly all computing devices and operating systems." ¶ 53. Accordingly, when these issues were discovered, every processor manufacturer had to take action to mitigate the risk that hackers could exploit the vulnerabilities to steal data from devices that used their chips. Apple is not aware of any real-world exploits of Spectre and Meltdown, and Plaintiffs do not identify any.

### C.      The Mitigation And Disclosure Of Spectre And Meltdown

To prevent the security issues that it discovers from being exploited before they can be patched, Project Zero follows a "coordinated" disclosure process. *See* Ex. F at 6. When Project Zero disclosed Spectre and Meltdown to affected manufacturers, it did so pursuant to agreements prohibiting them from disclosing the information they received. *Id.* The vulnerabilities are later publicly disclosed either when the manufacturer has identified a solution or when a time limit set by Project Zero runs out. The federal government endorses this approach to protect consumers from bad actors exploiting issues before they can be remedied. Ex. D at 2. Project Zero initially imposed a late-August 2017 deadline for public disclosure of Spectre and Meltdown. Recognizing the complexity of Spectre and Meltdown, however, it later decided to extend the deadline to January 9, 2018. *See* Ex. F at 2, 6-8, 11.

Apple was able to design an initial software patch for Meltdown and release it as part of an iOS update on December 2, 2017, and Apple included the initial software patch for Spectre in an iOS update released on January 8, 2018. *See* ¶ 54. Prior to Apple's release of the Spectre patch, however, information regarding the vulnerabilities was leaked and reported in the *New York Times* on January 3, 2018. ¶ 84. As a result, the next day, Apple issued a press release titled, "About Speculative Execution Vulnerabilities in ARM-based and Intel CPUs," which explained the efforts to address the vulnerabilities before they were reported to the public (and would-be hackers). ¶ 54.

---

[3] Plaintiffs allege that Spectre and Meltdown were separately reported around the same time by teams from Cyberus Technology and the Graz University of Technology. *See* ¶ 80.

1    Plaintiffs do not allege that Spectre or Meltdown has ever been used to illicitly gather information

2    from their (or anyone's) iDevices. To Apple's knowledge, that has never happened.

3                    **D.      Lawsuits Based On Spectre And Meltdown**

4            Following the announcement of Spectre and Meltdown, claimants around the country

5    rushed to file lawsuits against almost every major manufacturer of modern computer processors,

6    affecting essentially every computer, smartphone, tablet, and other device containing a CPU. *See*,

7    *e.g.*, *In re: Intel Corp. CPU Mktg. Sales Practices and Prods. Liab. Litig.*, No. 3:18-md-02828-SI

8    (D. Or.); *Hauck v. Advanced Micro Devices, Inc.*, No. 18-CV-00447-LHK (N.D. Cal.).

9                    **1.       Plaintiffs' Original Consolidated Complaint**

10           In their prior pleading (Dkt. 46), Plaintiffs asserted a range of claims, including alleged

11   torts, statutory violations, and breaches of warranty. But Plaintiffs did not allege that any of them

12   had ever noticed any performance impacts on their iDevices, that any of their iDevices had been

13   hacked, or that they had suffered any out-of-pocket losses. Apple moved to dismiss on the basis

14   that Plaintiffs lacked standing and failed to state any claim, including because disclaimers in the

15   very warranties Plaintiffs cited foreclosed their claims. At the hearing on Apple's motion,

16   Plaintiffs' counsel admitted that it was "not alleged" that "any of [his] clients have suffered any

17   breach or untoward intrusion because of" Spectre and Meltdown. Dec. 13, 2018 Hr'g Tr. at 41:4-

18   10. Plaintiffs' counsel further acknowledged that "Plaintiffs aren't going to stop using cell

19   phones . . . The reality is it's 2018. No one is saying we're going to go off the grid[.]" *Id.* 35:1-5.

20           The Court granted Apple's motion to dismiss because Plaintiffs had not alleged facts to

21   support that they suffered an injury-in-fact either due to the performance degradation purportedly

22   caused by Apple's software updates or because they had not received the benefit of the bargain

23   when they purchased their iDevices. MTD Order at 8-9. In rejecting Plaintiffs' first theory, the

24   Court denied outright Plaintiffs' argument that "they need not[] allege they personally experienced

25   a degradation of performance of their iDevices," *id.* at 5, and held that "named representatives

26   must allege and show that they personally have been injured, not that injury has been suffered by

27   other, unidentified members of the class," which Plaintiffs had not done because their "self-serving

28   and selective reading" of alleged test results "only support[ed] an inference that some users, not

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

1   most and certainly not all users, experienced slower performance in their iDevices." *Id.* at 4, 7-8.

2   The Court rejected Plaintiffs' second theory because Plaintiffs did not "allege facts to show their

3   iDevices are worth less than they paid for them" beyond the "conclusory allegations that they

4   'would not have purchased [their] iDevices, or paid the prices they did.'" *Id.* at 8-9.

### 2.      Plaintiffs' Second Consolidated Amended Complaint

6          Plaintiffs filed the Second Consolidated Amended Complaint ("SCAC") on February 21,

7   2019, after obtaining a four-week extension. Plaintiffs added a claim for common law fraudulent

8   concealment but abandoned other claims, such as their warranty claims. Plaintiffs carefully excised

9   references to Apple's warranties.

10         The SCAC contains a handful of new allegations. Specifically, Plaintiffs allege that they

11  had the performance of a single iPhone 7 tested, ¶¶ 4, 61-63, and that prices of certain used

12  smartphones purportedly declined for several months during the alleged class period, ¶¶ 72-78.

13  Plaintiffs, however, did not add any allegations specific to any of the named Plaintiffs. So, while

14  Plaintiffs' counsel claimed at the motion to dismiss hearing that Spectre and Meltdown were "like

15  a Defcon 5 type of an issue . . . a colossal security vulnerability," the SCAC does not include any

16  allegation that any device has ever been compromised, that any named Plaintiff personally

17  experienced any performance degradation (even subjectively) or stopped using his or her iDevice,

18  or that any named Plaintiff (or anyone else) spent any money repairing or upgrading an iDevice.

19  Dec. 13, 2018 Hr'g Tr. at 40:23-25. When a plaintiff "has already been given an opportunity to

20  address . . . deficiencies, but has not identified sufficient facts" in response, dismissal with

21  prejudice is warranted because "[i]t is highly doubtful that such facts exist." *See Wescott v.*

22  *Bushnell*, 2018 WL 3069474, at *5 (N.D. Cal. 2018).

## III.    DISCUSSION

### A.      Plaintiffs Still Have Not Established Article III Standing

25         To plead Article III standing, Plaintiffs "must clearly allege facts demonstrating" that they

26  "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

27  defendant, and (3) that is likely to be redressed by a favorable judicial decision." MTD Order at 4.

28  In dismissing the CAC, the Court rejected Plaintiffs' argument that "they need not[] allege they

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

6

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

personally experienced a degradation of performance of their iDevices," holding that "[i]n class actions, the ***named representatives*** must allege and show that ***they personally*** have been injured." *Id*. at 4-5 (emphasis added); *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Birdsong v. Apple*, 590 F.3d 955, 960-61 (9th Cir. 2009) (plaintiffs' injury must be "particularized as to themselves").

In the SCAC, Plaintiffs still do not allege that they personally suffered any performance degradation, and Plaintiffs' new allegations about the declining cost of used iPhones do not shore up their deficient overpayment theory. In any event, Plaintiffs have not even pled a cognizable product defect that can give rise to an injury-in-fact: Plaintiffs allege that Apple (and every other chipmaker) made a trade-off for performance over security by using speculative execution, and made a trade-off in the other direction with the mitigation patches. Even crediting Plaintiffs' allegations, this is not a defect but a design choice about how to balance two qualities that cannot be maximized at the same time.

### 1. Plaintiffs Have Not Addressed The Standing Defects Identified By The Court In The Dismissal Order

In dismissing the CAC, the Court held that Plaintiffs' allegations of an injury-in-fact based on purported performance degradation and overpayment did "not allege[] an injury that is sufficiently concrete and particularized to establish Article III standing." MTD Order at 8. As discussed below, the SCAC does not save either theory of standing.

### a. Plaintiffs' New Allegations About Performance Testing Do Not Support A Concrete, Particularized Injury-In-Fact

In dismissing the CAC, the Court held that Plaintiffs failed to allege a concrete, particularized injury because their "self-serving and selective reading" of the performance test results they had alleged in the CAC "only support[ed] an inference that some users, ***not most and certainly not all users***, experienced slower performance in their iDevices." *Id*. at 7-8 (emphasis added). In the SCAC, Plaintiffs have not cured this failure as they still have not alleged any personal injury or any facts that can support an inference that they personally were harmed by a purported performance degradation caused by Apple's software updates. *See Id*. Plaintiffs do not, for example, allege that they stopped using their iDevices, noticed any slowdown or performance

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

impacts to their iDevices after downloading the patches that Apple released, or otherwise found their iDevices unable to do anything Apple promised they would do. Instead, in the SCAC, Plaintiffs hinge their performance degradation claim on testing they performed on a single iPhone 7 running an unspecified version of iOS. *See* ¶¶ 4, 61-63. Plaintiffs claim that this testing supports the inference that ***all*** users of iPhone 7s—as well as the numerous other iDevices, using more than a dozen different CPUs, in the nine-year-long putative class—universally experienced performance degradations. This theory fails for at least two reasons.

*First*, Plaintiffs' assertion that the average performance impact purportedly showed by its testing of one iPhone is "indicative of the reduction in performance suffered by all other Class members" is at least as conclusory as the allegations in the CAC that the Court already rejected. ¶¶ 4, 61-63; MTD Order at 8. In the CAC, Plaintiffs alleged that an iPhone user performed testing on his own iPhone 6, which purportedly "show[ed] a significant decrease in performance up to 50 per cent in most areas." CAC at ¶ 42. The Court held that this allegation could not support an inference of a universal injury. MTD Order at 8; *see also Yunker v. Pandora Media*, 2013 WL 1282980, *4-5 (N.D. Cal. 2013) (rejecting plaintiff's theory of "[d]iminution in the performance of [plaintiff's] device" where he "d[id] not allege that he noticed any performance problems or that he had problems with his phone"); *Mount v. PulsePoint*, 2016 WL 5080131, *5 (S.D.N.Y. 2016), *aff'd*, 684 F. App'x 32 (2d Cir. 2017), a*s amended* (May 3, 2017) (dismissing claims where plaintiffs "nowhere alleged that either [named plaintiff] suffered slower browser performance" so the court could not "infer that [they] experienced any appreciable [injury]"); *In re Lenovo Adware Litig.*, 2016 WL 6277245, *3 (N.D. Cal. 2016); *Missaghi v. Apple*, 2013 WL 12203021, *5 (C.D. Cal. 2013).[4] Tellingly, in the SCAC, Plaintiffs disavow the testing that they relied on in the CAC as purported evidence of harm. *See*, *e.g.*, ¶¶ 58-60; CAC ¶¶ 41-43. That testing showed—as the Court recognized—"'no measurable reduction in performance' following the installation of either version of iOS" across several benchmarks. ¶ 58 (quoting Ex. C at 1-2). In a complete about-face,

---

[4] Plaintiffs further acknowledge that "72.8 million users with the iPhone 4, 4S, 5, and 5C are unable to download Apple's updates for Spectre and Meltdown," ¶ 67, which means users of those devices cannot state a claim based on the performance degradation purportedly caused by Apple's software updates. *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 458 n.15 (N.D. Cal. 2018); *Kane v. Chobani*, 2013 WL 5289253, *10 (N.D. Cal. 2013).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

1    Plaintiffs claim that testing does not "represent the real-world impact on performance." ¶ 60. But

2    a party cannot avoid a motion to dismiss by contradicting its prior pleading. *See Azadpour v. Sun*

3    *Microsystems*, 2007 WL 2141079, at *2 (N.D. Cal. 2007) (the court "need not accept [new

4    contradictory] facts as true").

5           Regardless, Plaintiffs' new allegations about a single iPhone 7 fare no better in showing a

6    concrete, individualized injury-in-fact. None of the Plaintiffs owned the iPhone 7 tested. Nor do

7    Plaintiffs allege that the device they tested was in the same condition as their own devices,

8    including whether the device was new or used, what applications it was running, or the age of its

9    battery. Plaintiffs do not even allege that a single one of them noticed on their own devices the

10   performance degradations Plaintiffs' new testing supposedly demonstrates, let alone that any other

11   iPhone 7 users—or users of the dozens of other types of iDevices at issue—experienced the same

12   effects. Plaintiffs offer zero facts bridging the gap between the tested iPhone and the 14 other

13   iPhone models at issue, much less iPads, iPods, and AppleTVs. And even on the lone iPhone

14   tested, Plaintiffs acknowledge that their testing only showed a performance impact "'in [some]

15   areas," not all areas. MTD Order at 7; *see* ¶¶ 62-63. Once again, Plaintiffs' allegations can at best

16   "only support an inference that some users, not most and certainly not all users, experienced slower

17   performance in their iDevices." MTD Order at 8.

18          ***Second***, Plaintiffs fail to allege enough detail about their purported testing to support an

19   inference that their purported injury was caused by the specific mitigations for Spectre and

20   Meltdown. Although Plaintiffs allege that the iPhone 7 device they tested experienced a slowdown

21   "after being updated to a version of iOS containing Apple's mitigation efforts," Plaintiffs do not

22   specify which version of iOS they installed in the test phone. ¶¶ 62-63. Plaintiffs do not plead any

23   facts indicating that it was the patches for Spectre and Meltdown that caused the purported

24   slowdown that device purportedly experienced. *See id*. Apple regularly releases patches and

25   updates for its iOS operating system to improve performance, add new features, and provide

26   product security updates. *See* Ex. C at 3-13. Without facts tying the mitigations to the alleged

27   performance impact, Plaintiffs have not alleged the required "causal connection between the injury

28   and the conduct complained of." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

### b.   Plaintiffs Have Not Pled Facts Demonstrating An Injury-In-Fact Based On Overpayment Or Diminution In Value

In the MTD Order, the Court also held that Plaintiffs did not have standing based on an economic injury because they "d[id] not allege facts to show their iDevices are worth less than what they paid for them" beyond the "conclusory allegations that they 'would not have purchased [their] iDevices, or paid the prices they did [for them].'" MTD Order at 8-9. The SCAC claims Plaintiffs suffered an economic injury because they overpaid for their iDevices or, in the alternative, that those devices diminished in value. Neither theory establishes standing.

With respect to overpayment, despite the Court's directive, Plaintiffs add no allegations beyond those the Court already rejected. *See* ¶ 68 (repeating verbatim the allegations from the CAC that Plaintiffs "would not have purchased [their] iDevices, or paid the prices they did [for them]."); *see also* ¶ 137. Plaintiffs' allegation that the price of certain used iPhones declined in 2018 does not support their overpayment theory, as Plaintiffs allege no facts connecting fluctuations in the secondary market for used iPhones to what Plaintiffs paid for their new iDevices years earlier.

Plaintiffs' alternative diminution-in-value theory also fails. Plaintiffs allege that a regression analysis that they claim to have performed (but did not attach to the SCAC) showed that the prices of four types of used iPhones decreased "*on average* by more than 79 dollars following Apple's January 4, 2018, announcement that all iPhones suffered from the Defects." ¶ 78 (emphasis added). Plaintiffs offer no basis to apply their purported analysis to the eleven other models of iPhones in the purported class, let alone any of the iPads, iPods, or AppleTVs at issue. Even if one sets aside the significant defects on the face of Plaintiffs' purported analysis,[5] this would, at best, "support an inference that some users, *not most and certainly not all users*" sold their iPhones for less than they might have but for the news of the vulnerabilities. *See* MTD Order at 8 (emphasis added). Plaintiffs do not claim they sold or would have sold their iPhones.[6]

---

[5] For example, Plaintiffs do not include any meaningful way to compare the alleged price drop in used iPhones to price declines affecting other smartphones, as they admit other phones' prices declined but do not allege by what percentage. Nor do Plaintiffs claim to have controlled for the impact of Apple's release of the iPhone X or considered holiday purchasing trends. *See* ¶ 78, 98.

[6] This Court has observed, and Plaintiffs acknowledged, that identifying a drop in the market price of smartphones is different than doing so for other products, such as cars and homes, where there

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

10

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

1      Plaintiffs cannot rely on allegations about fluctuations in market prices to paper over their

2 lack of a concrete, individualized injury. Here, Plaintiffs cannot allege that they personally

3 experienced a hack or a performance impact, so they attempt to manufacture harm based on alleged

4 market concern about theoretical risks. That does not pass muster under controlling Ninth Circuit

5 law, which holds that allegations that vulnerabilities caused a diminution in value fail to plead an

6 injury-in-fact. In *Birdsong*, the Ninth Circuit held that plaintiffs lacked standing to pursue fraud,

7 breach of warranty, and unfair competition claims where the alleged loss "d[id] not constitute a

8 distinct palpable injury that [wa]s actual or imminent because it rest[ed] on a hypothetical risk."

9 590 F.3d at 955-961. The same is true here, where any alleged harm to devices caused by Spectre

10 and Meltdown is at best hypothetical and therefore not actual or imminent. *See id.*; *see also Cahen*

11 *v. Toyota*, 147 F. Supp. 3d 955, 970 (N.D. Cal. 2015) ("economic injury that rests on the risk

12 presented by an underlying product defect fails to establish injury in fact if the underlying risk is

13 itself speculative"). This rule makes sense: given the unending cadence of newly discovered ways

14 to attack computers, smartphones, and other electronics, a contrary rule would open floodgates to

15 lawsuits filed every single time a new security vulnerability is discovered, even when (or, if

16 Plaintiffs have their way, ***because***) the vulnerability is patched before any hacker exploits it.

17      The concern about using market prices as a proxy for injury-in-fact is especially great here,

18 where Plaintiffs have not pled any basis for expectations about long-term resale value for iPhones.

19 An injury-in-fact must be based on harm to a legally protected interest. *Varadarajan v. U.S. Cricket*

20 *Ass'n*, 2012 WL 1252783, at *5 (N.D. Cal. 2012) (finding no standing where plaintiff "ha[d] not

21 clearly shown a legally protected interest" in avoiding alleged harm). Plaintiffs do not plead any

22 representation by Apple establishing an expectation that the long-term resale value of iDevices

23 would forever remain unaffected by security vulnerabilities or mitigations. *See infra* Sections

24 III.B.1.a, III.B.1.e. Because Plaintiffs have not pled (and cannot plead) a legally protected

25 expectation interest, whatever price decline they allege their regression analysis shows following

26

---

27 is a robust secondary market providing "real evidence" of a diminution in value. Dec. 13, 2018 Hr'g Tr. at 31:3-17 ("But there was real evidence of [a diminution in value in the case under

28 discussion] . . . There's real evidence that you can track that. You can go to these websites and see that."); *id.* at 39:9-12 (describing "the car market [as] unique" because "there's this robust secondary market where there's a Kelley blue book and they publish a guide of pricing").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

the announcement of the vulnerabilities cannot support standing. *See, e.g.*, *Silveira v. Lockyer*, 312 F.3d 1052, 1066-67 (9th Cir. 2002)*, as amended* (Jan. 27, 2003) (plaintiffs lacked standing to sue on right they did not have), *abrogated on other grounds by Dist. of Columbia v. Heller*, 554 U.S. 570 (2008); *see also Richter v. CC-Palo Alto*, 176 F. Supp. 3d 877 (N.D. Cal. 2016).

Furthermore*,* Plaintiffs cannot, as a matter of law, suffer an injury-in-fact based on a diminution in value where they cannot identify an alternative product that they would have purchased instead of the allegedly defective product. *See Boysen v. Walgreen*, 2012 WL 2953069, *7 n.9 (N.D. Cal. 2012) (dismissing claims for lack of Article III standing where "most if not all consumer fruit juices contain levels of lead and arsenic" and it was "not clear that alternative juices exist"); *Cahen v. Toyota*, 717 F. App'x 720, 723 (9th Cir. 2017) (describing plaintiffs' "economic loss theory [as] not credible" where "[n]early 100% of cars on the market....[were] vulnerabl[e] to hacking or privacy intrusions."). Here, there is no dispute that Spectre and Meltdown affected "***all*** modern processors and affect ***nearly all*** computing devices and operating systems." MTD Order at 2 (emphasis added). Indeed, Plaintiffs tacitly concede that, to the extent public disclosure of Spectre and Meltdown had any effect on their device value, it had an industry-wide effect, as their own regression analysis demonstrates that the prices of other smartphones declined by an unspecified percentage. ¶ 79.

### 2. Plaintiffs Cannot Plead An Injury-In-Fact Based On Design Choices That Are Not Product Defects

Even if Plaintiffs had pled that their iDevices had been hacked or that the patches somehow impaired their devices, this harm would not be a cognizable injury-in-fact because the conduct they complain of—an alleged trade-off between processor performance and security—is not a product defect capable of supporting an injury-in-fact for purposes of Article III standing. *See Lassen v. Nissan*, 211 F. Supp. 3d 1267, 1282 (C.D. Cal. 2016). Here, Plaintiffs do not allege that Apple promised (much less failed to deliver) any specific performance benchmark or particular level of security, and Plaintiffs expressly allege that improving performance may diminish security and vice versa. *See*, *e.g.*, ¶ 32 ("What speculative execution may gain in performance it gives up in security"). Plaintiffs' dissatisfaction with "Apple's design choices," ¶ 49, is not an injury-in-

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

1   fact for standing purposes. *See Lassen*, 211 F. Supp. 3d at 1282; *see also Azoulai v. BMW*, 2017

2   WL 1354781, *5 (N.D. Cal. 2017).

3         Two cases, *Birdsong v. Apple* and *Lassen v. Nissan* are instructive. In *Birdsong*, the district

4   court had dismissed for lack of standing plaintiffs' claims, because "plaintiffs ha[d] failed to allege

5   a cognizable defect under any of their asserted claims," including because "plaintiffs d[id] not

6   allege the iPods failed to do anything they were designed to do" and "plaintiffs fail[ed] to allege . . .

7   how the absence of their suggested changes caused any user injury." *Birdsong*, 590 F.3d at 959,

8   961. Similarly, in *Lassen*, plaintiffs claimed "that their vehicles' keyless fob systems [we]re

9   defective because [p]laintiffs [could] use them in a dangerous way, and they lack[ed] a safety

10  feature—Auto-Off—that could mitigate that danger." *Lassen*, 211 F. Supp. 3d at 1283. The court

11  dismissed the claims, finding that the plaintiffs had not pled an injury-in-fact in the consumer fraud

12  context because, as in *Birdsong*, plaintiffs did "not allege that the keyless fob systems

13  malfunctioned or 'failed to do anything they were designed to do,' and instead they 'merely

14  suggest[ed] possible changes . . . which they believe[d] would make the product safer." *Id.* In so

15  doing, the court explained that "when the product in issue functions as designed," "they have failed

16  to articulate a plausible legal theory of defect applicable to *their* [consumer fraud] claims [and]

17  therefore lack [] standing to pursue them." *See Id.* at 1288-89 (emphasis in original); *see also id.*

18  at 1282 ("Absent a cognizable defect, plaintiffs failed to plead any injury in fact.").

19        Plaintiffs here do not allege that Apple's processors failed to do anything Apple promised

20  they would do. At best, they complain that their iDevices initially were theoretically less secure

21  than they could have been (as a result of a feature that could improve processor speed) and later

22  one phone allegedly did some things more slowly than it used to (as a result of a patch that

23  improved security). The consumer fraud laws do not allow Plaintiffs to second-guess Apple's

24  design choices and reweigh the unavoidable trade-offs involved in designing products that keep

25  consumer information safe. *See Boysen*, 2012 WL 2953069, *7 (holding that "defendant's product

26  w[as] unsatisfactory to" plaintiff cannot support standing for an omissions claim).

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

**B.     Plaintiffs Have Not Stated Any Claim**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). Allegations that sound in fraud, including consumer fraud claims, must be pled with the particularity required by Fed. R. Civ. P. 9(b). *See*, *e.g.*, *Kearns v. Ford*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Gold v. Lumber Liquidators*, 2015 WL 7888906, *12 (N.D. Cal. 2015). To comply with Rule 9(b), a plaintiff must specifically allege the challenged statement, including "what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy*, 317 F.3d 1097, 1106 (9th Cir. 2003).

**1.     Plaintiffs Have Not Stated A Fraud Claim**

Plaintiffs' fraud-based claims fail at least three times over, as Plaintiffs have not pled a misrepresentation (either affirmative or by omission), reliance, or damages. *See Yastrab v. Apple*, 173 F. Supp. 3d 972, 977 (N.D. Cal. 2016); *see also Rasmussen v. Apple*, 27 F. Supp. 3d 1027, 1032 (N.D. Cal. 2014); *Gold*, 2015 WL 7888906, *11 (applying New York law); *Herne v. Cooper Indus.*, 2005 WL 2671540, *3 (D.N.H. 2005).

**a.     Plaintiffs Have Not Alleged An Affirmative Misrepresentation**

None of the statements Plaintiffs identify constitutes a "misstatement of fact," a dispositive element of Plaintiffs' claims. *Oestreicher v. Alienware*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008); *see also In re Apple Device*, 347 F. Supp. 3d at 458 n.15 (dismissing misrepresentation claim regarding iPhone processor speed); *Hauck*, 2018 WL 5729234 at *5, *9 (dismissing misrepresentation claims regarding Spectre in non-Apple devices).

None of the press releases or YouTube videos cited by Plaintiffs says anything at all about security vulnerabilities. None concerns the performance effects of security updates or patches—and the Software License expressly states that updates and other downloads, "if any, may not . . . include all existing software features." Ex. B at 1 § 1(b). Plaintiffs also allege no Apple representation that promises any specific speed or performance metric for any individual iDevices, including how fast the device could do any of the tasks Plaintiffs purported to have tested (*e.g.*, download applications from the Apple App Store or transferring files over Wi-Fi using AirDrop).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

¶¶ 62-63; *cf. Sciacca v. Apple*, 2019 WL 331280, *7 (N.D. Cal. 2019) (dismissing misrepresentation claims regarding watch screen cracking where "none of the alleged misrepresentations . . . relate to the 'omitted' information: that the Watch screen may detach, crack, or shatter because of the alleged defect."). And no statement cited so much as mentions any iPod or Apple TV device. *See also Oestreicher*, 544 F. Supp. 2d at 973. Even if Plaintiffs could point to a representation mentioning ***any*** of these attributes, Plaintiffs do not allege a single fact supporting the inference that the statements made by Apple were not true when made. *Hauck*, 2018 WL 5729234 at *5, *9.

Every statement Plaintiffs describe is too generic to be actionable as a matter of law. The statements regarding "remarkable speed and efficiency" and "industry-leading performance" (¶¶ 87-112) are just as general as the alleged misrepresentations that this Court rejected in *In re Apple Device*, where plaintiffs challenged statements that certain products "performed better than other devices on the market," "at or above the industry standard or performance," "faster and better than ever," and with "performance and graphics up to twice as fast." 347 F. Supp. 3d at 457. Plaintiffs' alleged misstatements are likewise too "broad . . . to ground Plaintiffs' affirmative misrepresentation claim." *Id.*; *Yastrab* 173 F. Supp. 3d at 979 (Davila, J.) (dismissing consumer fraud claim based on "general descriptions [of] the iPhone's attributes" that could not be construed as "pre-purchase representations made by Apple about the consistency of these features, after software updates or otherwise"); *In re iPhone 4S Consumer Litig.*, 2014 WL 589388, *5-6 (N.D. Cal. 2014); *Baltazar v. Apple*, 2011 WL 6747884, *3 (N.D. Cal. 2011).

**b.      Plaintiffs Have Not Alleged An Actionable Omission**

To plead a fraudulent omission under consumer fraud statutes or the common law, Plaintiffs must plead with particularity facts showing that Apple both (1) knew of the allegedly omitted information; and (2) had a duty to disclose it. *See*, *e.g.*, *Williamson v. Apple*, 2012 WL 3835104, *7 (N.D. Cal. 2012) (dismissing omissions claim where "Plaintiff [did] not allege what was actually known to Apple in anything less than a conclusory fashion"); *Lassen*, 211 F. Supp. 3d at 1287 ("To establish their consumer fraud claims, Plaintiffs must show that the manufacturers *knew* their vehicles were defective before selling them, and concealed or violated a duty to disclose

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

15

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

the defect in order to induce Plaintiffs to purchase those vehicles.") (emphasis in original); *Gomez v. Carmax Auto Superstores California*, 2015 WL 350219, *8 (C.D. Cal. 2015) (elements of common law fraudulent omission). At the hearing on Apple's Motion to Dismiss, Plaintiffs repeatedly shifted their position on when Apple allegedly knew about Spectre and Meltdown and when it had a duty to disclose anything.[7] Regardless of the theory, however, Plaintiffs do not plead an actionable omission.

### i. Plaintiffs Have Not Alleged Any Fact That Apple Knew And Should Have Disclosed Prior To June 2017

For at least two reasons, Plaintiffs cannot support an omissions-based claim by asserting that Apple "should have known" of and disclosed the vulnerabilities earlier. *See* ¶¶ 5, 80.

As an initial matter, Plaintiffs' allegation that Apple ***should have known*** about Spectre and Meltdown does not state a claim under consumer protection statutes and the common law because those laws require "***actual knowledge***," such that the omission is not merely negligent, but unfair and deceptive. *See Punian v. Gillette*, 2015 WL 4967535, *9 (N.D. Cal. 2015) (holding that "plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss") (quoting *Wilson v. Hewlett Packard*, 668 F.3d 1136, 1145 (9th Cir. 2012); *see also Hauck*, 2018 WL 5729234 at *6 ("it is not enough to allege that a defendant *should have known* about a defect"); *Gomez*, 2015 WL 350219 at *8 (requiring knowledge of falsity).[8]

Here, Plaintiffs' allegations in the SCAC contradict any claim that Apple had actual knowledge. Plaintiffs admit that Spectre and Meltdown were not discovered until 2017. *See* ¶ 80 ("three independent teams . . . were able to ***discover*** Meltdown, and two independent teams . . . were able to ***discover*** Spectre") (emphasis added). Accordingly, Apple could not have had actual knowledge of Spectre and Meltdown before June 2017, and Plaintiffs' theory fails as a matter of law.

---

[7] *See* Dec. 13, 2018 Hr'g Tr. at 33:1-16 (Plaintiffs' counsel: the vulnerabilities were "a fundamental design defect that has been in these processor[s] since the early 1990s when researchers showed that this was a problem . . . up through 2012 when Apple made modifications to the operating system . . . and then again up through 2017" when third-party researchers "discovered" the vulnerabilities).

[8] New York and New Hampshire law likewise require affirmative deception. *Leider v. Ralfe*, 387 F. Supp. 2d 283, 294 (S.D.N.Y. 2005); *Brace v. Rite Aid*, 2011 WL 635299, *5 (D.N.H. 2011).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

16

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

1    The few facts Plaintiffs plead to allege Apple's purported knowledge are insufficient to

2    support any plausible inference that Apple knew about Spectre and Meltdown prior to the summer

3    of 2017. Plaintiffs point to a 1995 "paper published by the Institute of Electrical and Electronic

4    Engineers," which they say first identified "[t]he theoretical possibility of the Meltdown Defect."

5    *See* ¶ 5. But Plaintiffs ignore the fact that, by definition, information contained in a published paper

6    would have been publicly available and therefore could not have been withheld by Apple. *See In*

7    *re Apple Device*, 347 F. Supp. 3d at 462 (dismissing knowledge allegations where "facts were not

8    in Apple's exclusive knowledge but were readily accessible to the public"). And moreover, Judge

9    Koh recently rejected precisely the same type of knowledge allegations in the context of similar

10   claims involving AMD's processors. In *Hauck*, Judge Koh noted that "vague, sweeping statements

11   about industry research and general knowledge garnered from conferences and academic papers

12   of [a] *potential* to exploit processors and gather confidential information" is insufficient to plead

13   knowledge. *Hauck*, 2018 WL 5729234 at*6 (emphasis in original). The same reasoning applies

14   here and publicly available academic articles regarding the "***theoretical possibility***" of a security

15   vulnerability are insufficient to allege actual knowledge.

16   Further, Plaintiffs do not (and cannot) allege that Apple failed to disclose a potential

17   vulnerability discussed in a public, "theoretical" paper in 1995. ¶ 5. Plaintiffs' allegations are

18   entirely specific to the actual vulnerabilities identified as Spectre and Meltdown. *See, e.g.* ¶ 134

19   (alleging that "Apple failed to disclose . . . that iDevices suffered from [both Spectre and

20   Meltdown], the nature of [Spectre and Meltdown], that efforts to mitigate [Spectre and Meltdown]

21   would cause impaired performance of the iDevices, and that [Spectre and Meltdown] cannot be

22   fully repaired without impairing performance of the iDevices"). But, Plaintiffs have not articulated

23   any facts that (even if true) show that anyone ***had even discovered Spectre and Meltdown until***

24   ***mid-2017***, let alone in 1995. To the contrary, they claim the opposite. This dooms Plaintiffs' claim

25   for the period before mid-2017.

26   Similarly, Plaintiffs' vague references to changes Apple purportedly adopted for iOS and

27   tvOS in 2012 to "defend against Meltdown," ¶ 5, are also insufficient. Setting aside that this

28   allegation contradicts Plaintiffs' assertion that Meltdown was not even discovered until five years

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

17

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

later,[9] ¶ 80, this allegation is conclusory, insufficient to put Apple on notice, and no different than a similar allegation made by plaintiffs in *Williamson*, where plaintiffs alleged "that, '[a]ccording to sources inside and outside Apple,' the company began working to correct the defect," which allegation this Court dismissed as wholly conclusory and insufficient to state a claim. 2012 WL 3835104 at *7 (Davila, J.).

### ii.     Apple Had No Duty To Disclose The Vulnerabilities Earlier Than It Did

Plaintiffs also fail to allege an actionable omission because they fail to plead that Apple had a duty to disclose the vulnerabilities any earlier than it did. Plaintiffs' attempt to invoke consumer protection statutes to argue that Apple should have revealed security vulnerabilities that could compromise user data prior to developing a fix is ironic: consumers would unquestionably be less "protected" under a rule where security vulnerabilities had to be disclosed to would-be hackers before they could be patched. That is not the law.

"'California courts have generally rejected a broad obligation to disclose' and have found that 'a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation *or a safety issue*.'" *Ferranti v. Hewlett-Packard*, 2015 WL 5302674, *7 (N.D. Cal. 2015) (emphasis added) (Davila, J.) (holding that "for the omission to be material, the failure must still pose safety concerns'") (quoting *Wilson v. Hewlett-Packard*, 668 F.3d 1136, 1142 (9th Cir. 2012)); *Hodges v. Apple*, 2013 WL 6698762, *4 (N.D. Cal. 2013). As discussed in Section III.B.1.a above, Plaintiffs have not alleged an affirmative misrepresentation. In addition, for a purported defect to raise safety concerns, plaintiffs must allege that it creates "a risk of *physical* injury." *Herremans v. BMW*, 2014 WL 5017843, *14 (C.D. Cal. 2014) (emphasis added); *see also Williams v. Yamaha*, 851 F.3d 1015, 1029 (9th Cir. 2017) (noting "that the standard is one of an 'unreasonable' safety risk"). Plaintiffs do not allege that the facts they claim Apple should have disclosed raised safety concerns, let alone a single fact explaining how a theoretical possibility of unauthorized access to user data or the possible slowdown in performance can

---

[9] The Court need not accept as true allegations that are contradicted by other matters in the pleadings (or incorporated by reference therein) or facts that are subject to judicial notice. *See Steckman v. Hart Brewing*, 143 F.3d 1293, 1295 (9th Cir. 1998).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

18

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

1  somehow create "a risk of **physical** injury" to device users. *Herremans*, 2014 WL 5017843 at *14

2  (emphasis added). Accordingly, they have failed to allege that the vulnerabilities constituted a

3  safety issue that must be disclosed. *See, e.g., Ferranti*, 2015 WL 5302674 at *7 (Davila, J.)

4  (dismissing claim where "the purported defect d[id] not pose a safety concern to consumers").

5         Outside the safety context, *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 328 (Cal. Ct. App.

6  1997), sets forth the narrow circumstances in which there is an affirmative disclosure obligation.

7  Plaintiffs do not satisfy any of the *LiMandri* categories: Plaintiffs do not allege Apple had a

8  "fiduciary relationship" with Plaintiffs; Apple did not have "exclusive knowledge" of any alleged

9  vulnerabilities, since at least "three independent [research] teams" discovered them first, ¶¶ 80-81;

10 and Plaintiffs cannot show "active concealment" because Plaintiffs do not allege any fact

11 supporting an inference that Apple "intentionally concealed or suppressed the fact with the intent

12 to defraud the [P]laintiffs." *Punian v. Gillette*, 2016 WL 1029607, *16 (N.D. Cal. 2016). Finally,

13 any claim that Apple made just "partial representations" fails for the same reasons Plaintiffs'

14 affirmative misrepresentation claim fails, *see supra* Section III.B.1.a. *See LiMandri*, 52 Cal.App.

15 4th at 336-37.

16
17             **c.**     **Apple's Public Statements Regarding Vulnerabilities And Software Updates Undermine Any Claim Of Deception**

18        The notion that the proposed class was misled here is belied by Apple's disclosed policy

19 that it does not announce vulnerabilities until they have been patched—a policy that undoubtedly

20 protects consumers better than the alternative. Specifically, on the same website where Plaintiffs

21 allege customers would have seen alleged misrepresentations, Apple prominently discloses that

22
23             For our customers' protection, Apple doesn't disclose, discuss, or confirm security issues until an investigation has occurred and patches or releases are available.

24  Ex. C at 3. There is nothing misleading about Apple disclosing security vulnerabilities in a manner

25 consistent with its publicly stated policy. *See, e.g., Larin v. Bank of Am.*, 617 F. App'x 651, 652

26 (9th Cir. 2015) (affirming dismissal of consumer fraud claim where defendant "disclosed . . . its

27 general policy" and proceeded "in the manner disclosed"); *Augustine v. FIA Card Servs.*, 485 F.

28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

19

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

1    Supp. 2d 1172, 1174 (E.D. Cal. 2007) (dismissing consumer fraud claim).[10]

2           Apple's practice is consistent with the policy of "coordinated disclosure" endorsed by the

3    Department of Homeland Security, and is designed to protect consumers. *See, e.g.*, Ex. D at 2

4    (explaining that the National Cybersecurity and Communications Integration Center ("NCCIC")

5    at DHS "works with trusted partners . . . in the . . . private sector[] to coordinate timely and

6    responsible disclosure of vulnerabilities [so that r]isks are publicized only after practical and

7    effective mitigations are available to users"). Working within with these guidelines by following

8    Project Zero's "coordinated disclosure" of Spectre and Meltdown—again, a process expressly

9    intended to protect Plaintiffs and other consumers—does not give rise an actionable omission. *See*,

10   *e.g.*, Cal. Civ. Code § 1760 (providing that the purpose of the Consumer Legal Remedies Act is

11   "to protect consumers").[11] Indeed, at the hearing on Apple's motion to dismiss the CAC, Plaintiffs'

12   counsel could not identify how much earlier Apple should have disclosed Spectre and Meltdown

13   while also protecting consumers from bad actors who might exploit the vulnerabilities. *See, e.g.*,

14   Dec. 13, 2018 Hr'g Tr. at 43:19-21 ("I'm not saying at the moment someone, anyone, calls and

15   says 'hey, you have a problem, stop the presses, let's issue a press release.'"); *id.* at 44:6-47:1

16   ("Apple's . . . a little bit between a rock and a hard place . . ."). Nor does the SCAC clarify what

17   Apple should have done differently to keep consumers safer.

18                    **d.     Plaintiffs Have Not Alleged Reliance**

19          "To maintain a [consumer fraud] claim[,] a plaintiff must plead facts showing that she

20   relied on the defendant's alleged misrepresentation," which includes "show[ing] that had the

21   omitted information been disclosed, one would have been aware of it and behaved differently."

22   *Hall v. Sea World*, 2015 WL 9659911, *3, *5 (S.D. Cal. 2015). Thus, if Plaintiffs cannot

23   "specifically allege that [they] saw or heard, let alone relied on, any advertisements, offers, or other

24   ―――――――――――

25   [10]Apple also stated: "APPLE DOES NOT WARRANT AGAINST INTERFERENCE WITH
     YOUR ENJOYMENT OF THE iOS SOFTWARE . . . THAT THE FUNCTIONS CONTAINED
26   IN . . . THE iOS SOFTWARE WILL MEET YOUR REQUIREMENTS, THAT THE
     OPERATION OF THE iOS SOFTWARE . . . WILL BE UNINTERRUPTED OR ERROR-
27   FREE, . . . [OR] THAT DEFECTS IN THE iOS SOFTWARE . . . WILL BE CORRECTED." Ex.
     B at 6 § 7.4.
28   [11] *See also Bildstein v. MasterCard*, 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004); *Brace*, 2011 WL
     635299 at *5.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

20

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

representations of [Apple] in advance of their . . . purchases," Plaintiffs have "fail[ed] to plead how, if the allegedly omitted material had been disclosed, [] Plaintiffs would have been aware of it and behaved differently." *Id*. at *6.[12]

Where a plaintiff alleges exposure to a long-term advertising campaign, an inference of reliance "may" be permitted. *Colman v. Theranos*, 2018 WL 2463097, *11 (N.D. Cal. 2018). But Plaintiffs must still "comply[] with Rule 9(b)," *Yastrab*, 173 F. Supp. 3d at 980, and "'the same level of specificity is required [to plead] reliance' as . . . misrepresentations," *Marolda v. Symantec*, 672 F. Supp. 2d 992, 1001 (N.D. Cal. 2009). Here, Plaintiffs' claim that they relied on "extensive and long-term advertising and promotion efforts" by Apple fails for three reasons. ¶ 86.

***First***, although Plaintiffs allege in conclusory fashion that "Plaintiffs and Class members were exposed to Apple's marketing of its iDevices during the Class Period," *id.*, Plaintiffs do not allege, as they must, that they were each actually exposed to the advertising campaigns the SCAC alleges contain misrepresentations or omissions. This Court has held that a plaintiff who "plead[s] a long-term advertising campaign" is not "excused from complying with the" requirement of alleging individual exposure to the allegedly misleading advertising statements. *Yastrab*, 173 F. Supp. 3d at 980 (Davila, J.); *In re Apple Device*, 347 F. Supp. 3d at 458. Whether such a campaign existed or not, "[p]laintiffs are still obligated . . . to ***plead separately and with particularity" the "statements the[y] . . . actually saw*** and relied upon." *In re Apple Device*, 347 F. Supp. 3d at 458. Plaintiffs do not do so, and that is an independent basis for dismissal. *See Hall*, 2015 WL 9659911 at *6 (dismissing consumer fraud claims where plaintiffs did "not specifically allege that [they] saw or heard, let alone relied on, any advertisements, offers, or other representations" and thus "fail[ed] to plead how, if the allegedly omitted material had been disclosed, the[y] []would have been aware of it and behaved differently"); *Yastrab*, 173 F. Supp. 3d at 978 (dismissing consumer fraud claim for failure to plead reliance, where plaintiff "d[id] not describe what . . . he saw when reviewing 'TV commercials and the Apple website'").

***Second***, Plaintiffs do not adequately allege that any of the promotional statements on which

---

[12] In New York and New Hampshire, this element is labelled "causation" rather than "reliance." *See Gautschi v. Auto Body Disc. Ctr.*, 660 A.2d 1076, 1078 (N.H. 1995); *In re Myford Touch.*, 2016 WL 6873453, *4 (N.D. Cal. 2016).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

21

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

they rest their claim were part of an actual "long-term advertising campaign." To be sure, the SCAC alleges the amount of money Apple spends on its advertising generally and refers to the number of "impressions" Apple's promotional activities generates. ¶¶ 113-14. But the only specific promotional statements Plaintiffs cite are a handful of YouTube videos and a series of roughly annual press releases, ¶¶ 87-112, the types of materials that consumers themselves must actively seek out online and courts regularly describe as not constituting a widespread campaign. *See, e.g.*, *Hall*, 2015 WL 9659911 at *4 (finding that "statements . . . not even made in advertisements, let alone as part of a pervasive advertising campaign" cannot support an inference of reliance); *Haskins v. Symantec*, 2014 WL 2450996, *2-3 (N.D. Cal. 2014), *aff'd*, 654 F. App'x 338 (9th Cir. 2016) (finding that "an average consumer would be unlikely to read . . . press releases"); *Ono v. Head Racquet Sports*, 2016 WL 6647949, *11 (C.D. Cal. 2016) (finding it "unreasonable to assume that an individual . . . would have been exposed to" "press releases"). These are not the broadly distributed, passively consumed television commercials and magazine advertisements capable of supporting the inference of reliance that Plaintiffs seek.[13] *See Colman*, 2018 WL 2463097 at *8-9 (finding that "presuming reliance is improper except in extraordinary cases of intense, long-term advertising campaigns"). Plaintiffs' attempt to plead reliance based on "long-term advertising and promotional efforts" thus fails for this reason alone.

**Third**, and finally, Plaintiffs do not (and cannot) allege that they would have acted differently had Apple disclosed Spectre and Meltdown earlier. Apple told consumers (on the very same apple.com website where its press releases are posted) that it "doesn't disclose, discuss, or confirm security issues until an investigation has occurred and patches . . . are available," Ex. C at 3, and its Software License states that all Apple updates were provided "'as is' and 'as available'" basis "with all faults and without [any] warranty," Ex. B at 6 § 7.3. Plaintiffs cannot plausibly allege that disclosure of the two specific vulnerabilities would have changed their minds. Indeed, Plaintiffs' counsel admitted that "Plaintiffs aren't going to stop using cell phones . . . No one is

---

[13] In addition, Plaintiffs only identify statements that cover a subset of devices implicated in Plaintiffs' claims, and the SCAC does not contain a single purported statement regarding the iPhone 4S, iPod Touch or Apple TV, requiring dismissal of any claims for those devices. *See In re Apple Device*, 347 F. Supp. 3d at 458.

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SILICON VALLEY

22

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

saying we're going off the grid[.]" Dec. 13, 2018 Hr'g Tr. at 35:1-5. Plaintiffs do not even allege that there were vulnerability-free alternatives (and there were not). *See* Ex. G at 5; 10; *Peerless Wall & Window Coverings v. Synchronics*, 85 F. Supp. 2d 519, 533-34 (W.D. Pa. 2000), *aff'd*, 234 F.3d 1265 (3d Cir. 2000) (finding "no evidence that plaintiff would not have acquired defendant's software . . . had it been disclosed that it was not Y2K-compliant," since there was "no evidence that any Y2K-compliant software . . . was even on the market").

### e.    Plaintiffs Have Not Alleged Damages

Plaintiffs' only conceivable theory of damages is that Plaintiffs were deprived of the benefit of their bargains. Plaintiffs—who do not allege that they spent any money on repairs or sold their phones for less than they could have but for Apple's alleged misconduct—do not claim that they realized any actual economic loss, and the hypothetical risk that a hacker could have—but did not—access sensitive data is not a cognizable injury. *See supra* Section III.A.1.b; *Cahen*, 147 F. Supp. 3d at 966, *aff'd*, *Cahen*, 717 F. App'x at 723 (finding that "future injury caused by insecure software is not an injury"); *Yunker*, 2013 WL 1282980 at *5; *see also* MTD Order at 5 (observing that Plaintiffs' "claims are not based on a 'theoretical risk of hacking'").

Plaintiffs' benefit-of the bargain theory fails, however, because Plaintiffs have not pled their expectations in their bargain with Apple.[14] As discussed in Section III.A.1.b, Plaintiffs allege no promise by Apple that any of the dozens of iDevices at issue would perform to any specific speed or other metric, and Apple expressly offered all software updates "as is" and "with all faults and without warranty of any kind." Ex. B at 6 § 7.3. A small, variable reduction from an unspecified benchmark simply cannot give rise to cognizable consumer fraud damages. *See*, *e.g.*, *Tae Hee Lee v. Toyota*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014) (finding no damages where plaintiffs had not alleged "representations about the amount or extent of speed reduction provided by" defendant's product); *Anderson v. Hyundai*, 2014 WL 12579305, *7 (C.D. Cal. 2014) (finding no damages where plaintiffs "ha[d] not alleged . . . any representations related to frequency or

---

[14] The economic loss rule further bars any effort by Plaintiffs to recover money damages for alleged common law fraud, given Plaintiffs' prior framing of these claims under a warranty theory. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 968 (S.D. Cal. 2014), *order corrected*, 2014 WL 12603117 (S.D. Cal. 2014).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

23

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

speed" of airbag deployment). Further, because Spectre and Meltdown affected devices industry-wide, Plaintiffs cannot plausibly allege that any consumer would have switched to another company's device or bargained Apple down, or that the market would have done that work for them. *See supra* Section III.A.1.b; *Cahen*, 147 F. Supp. 3d at 970, *aff'd*, 717 F. App'x at 723 (voicing skepticism that a defect that affects an entire industry "would translate into economic injury").

## 2.      Plaintiffs Have Not Stated An Unfair Competition Claim

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof Code § 17200. Plaintiffs allege that Apple violated the UCL by engaging in unfair, fraudulent, and unlawful actions. ¶¶ 139-146. As a threshold matter, Plaintiffs' UCL claims fail because Plaintiffs do not allege reliance, and the SCAC provides no basis for restitution or an injunction, the only remedies available under the UCL. *See* Section III.B.1.d; *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009); *see also Moore v. Apple*, 73 F. Supp. 3d 1191, 1200 (N.D. Cal. 2014); *Hall*, 2015 WL 9659911, *2 (under the UCL, "a plaintiff may only recover restitution and injunctive relief"); *Wofford v. Apple*, 2011 WL 5445054, *3 (S.D. Cal. 2011) ("the loss of use and loss of value of Plaintiffs' iPhones are not recoverable as restitution because they provide no corresponding gain to [Apple]," and "[i]njunctive relief is inappropriate as well because [Apple] remedied the software defect . . . when it released a patch . . . .").

Plaintiffs have not satisfied any of the three UCL prongs. As discussed elsewhere in this brief, Plaintiffs do not allege fraudulent conduct or an independent violation of any law. *See supra* Section III.B.1. And under California law, if the allegedly "unfair" business practice "overlap[s] entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley v. Kellogg Sales*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017).

The "unfair" practices that Plaintiffs allege can be boiled down to two propositions: Apple allegedly (1) designed products that traded some degree of security for some degree of performance, and (2) did not disclose that it had done so. *See* ¶ 32. But the theory that it is somehow

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

24

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD

1  "unfair" to design a product that balances safety and performance (versus maximizing safety at all

2  performance costs) is neither realistic nor a basis for a UCL claim; rather, it is a products-liability

3  claim in disguise. Where (as here) there is no allegation of personal injury, property damage, or

4  even breach of warranty, California courts hold such claims do not satisfy the UCL "unfairness"

5  prong. *See Lassen*, 211 F. Supp. 3d at 1288; *see also Bardin v. DaimlerChrysler*, 39 Cal. Rptr. 3d

6  634, 645-46 (Ct. App. 2006) (dismissing unfair trade practice claim where plaintiff alleged that

7  exhaust pipe's design fell short of industry standards for durability). And any complaint that Apple

8  failed to disclose anything about the vulnerabilities overlaps entirely with, and fails for the same

9  reasons as, Plaintiffs' meritless fraud-based claims.

10  ### 3.    Plaintiffs Have Not Stated An Unjust Enrichment Claim

11  Plaintiffs' tacked-on unjust enrichment claim should also be dismissed because (1) unjust

12  enrichment is not a cause of action in California, (2) the conduct on which Plaintiffs' claim is

13  based is covered by—as well as disclaimed under—their express, valid contracts with Apple, in

14  the form of the Hardware Warranty and the Software License (Exs. A-B), and (3) Plaintiffs are not

15  entitled to restitution,[15] which is the only remedy available for unjust enrichment. *See, e.g.,*

16  *Missaghi*, 2013 WL 12203021 at *5; *Marcus v. Apple*, 2015 WL 151489, *10 (N.D. Cal. 2015);

17  *Berenblat v. Apple*, 2009 WL 2591366, *6 (N.D. Cal. 2009); *supra* at III.B.2.

18  ## IV.    CONCLUSION

19  For the reasons set forth above, Plaintiffs still have not alleged standing to sue or stated a

20  claim. In light of Plaintiffs' repeated failure to cure these deficiencies, notwithstanding the

21  guidance in this Court's recent dismissal orders in this case and others, Apple seeks dismissal with

22  prejudice. *See Azoulai*, 2017 WL 1354781 at *10.

23  Dated:  March 25, 2019                                      Respectfully submitted,

24                                                             LATHAM & WATKINS LLP

25                                                             By: */s/ Matthew Rawlinson*
                                                               Matthew Rawlinson

26                                                             *Attorneys for Defendant Apple Inc.*

---

27  [15] As noted in Section III.A.1.b, *infra*, Plaintiffs fail to plead an overpayment, and their diminution-of-value allegations cannot support restitution because, when their iDevices' "value [allegedly]

28  dropped[,] . . . the difference was not transferred to" Apple. *Smit v. Charles Schwab*  2011 WL 846697, *10 (N.D. Cal. 2011).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

25

DEFENDANT APPLE INC.'S
MOTION TO DISMISS SCAC & MEM. ISO THEREOF
Master Docket No. 5:18-CV-00147-EJD