LATHAM & WATKINS LLP
Mark S. Mester (*pro hac vice*)
    *mark.mester@lw.com*
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Matthew Rawlinson (SBN 231890)
    *matt.rawlinson@lw.com*
Arman Zahoory (SBN 306421)
    *arman.zahoory@lw.com*
140 Scott Drive
Menlo Park, CA 94025-1008
Telephone: +1.650.328.4600
Facsimile: +1.650.463.2600

Melanie M. Blunschi (SBN 234264)
    *melanie.blunschi@lw.com*
Grant E. Strother (SBN 258506)
    *grant.strother@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| IN RE APPLE PROCESSOR LITIGATION | Master Docket No. 5:18-CV-00147-EJD |
|  | **DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
|  | Date: February 3, 2022 |
|  | Time: 9:00 a.m. |
|  | Court: Courtroom 4, 5th Floor |
|  | Judge: Hon. Edward J. Davila |

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 3, 2022, at 9:00 a.m. in Courtroom 4 of the United States District Court for the Northern District of California, San Jose Division, located at 280 S. 1st Street, San Jose, California, Defendant Apple Inc. ("Apple") will and hereby does move to dismiss with prejudice all claims brought by Plaintiffs Jennifer Abrams, Anthony Bartling, Robert Giraldi, and Jacqueline N. Olson in the Second Consolidated Amended Complaint. This motion is supported by the attached Memorandum of Points and Authorities and by the Declaration of Grant E. Strother and the Request for Judicial Notice and Incorporation by Reference filed herewith.

Apple respectfully submits this motion under Federal Rules of Civil Procedure 12(b)(6), 8(a), and 9(b) on the grounds that Plaintiffs do not allege sufficient facts to state a claim for any cause of action. Nearly all of Plaintiffs' claims sound in fraud, but Plaintiffs have not stated any fraud-based claim because they do not allege (a) any affirmative misrepresentation or actionable omissions, (b) reliance or (c) damages. Each of these failures independently requires the dismissal of Plaintiffs' claims under the California Legal Remedies Act (Count I), the California Unfair Competition Law ("UCL") (Count II), New Hampshire Consumer Protection Act ("NH CPA") (Count III), New York General Business Law (Counts IV and V), and common law (Count VII). Additionally, Plaintiffs' claims for equitable relief under the UCL, NH CPA, and an unjust enrichment theory (Count VI) are all barred by the Ninth Circuit's recent decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), and suffer additional dispositive pleading failures (*e.g.*, unjust enrichment is not even a cause of action under California law).

In the time since Plaintiffs initially sued in January 2018, they have had ample opportunity to adequately plead their case, including in response to Apple's prior two motions to dismiss—both of which raised most of these same grounds—yet the same dispositive flaws persist. The Second Consolidated Amended Complaint should be dismissed with prejudice.

1

1  DATED: August 31, 2021                    LATHAM & WATKINS LLP

2                                            By:   /s/ Melanie M. Blunschi
                                                  Melanie M. Blunschi (CA Bar No. 234264)
3                                                 Grant E. Strother (CA Bar No. 258506)
                                                  505 Montgomery Street, Suite 2000
4                                                 San Francisco, CA 94111-6538
                                                  Telephone: +1.415.391.0600
5                                                 Facsimile: +1.415.395.8095
                                                  *melanie.blunschi@lw.com*
6                                                 *grant.strother@lw.com*

7                                                 Matthew Rawlinson (CA Bar No. 231890)
                                                  Arman Zahoory (CA Bar No. 306421)
8                                                 140 Scott Drive
                                                  Menlo Park, CA 94025-1008
9                                                 Telephone: +1.650.328.4600
                                                  Facsimile: +1.650.463.2600
10                                                *matt.rawlinson@lw.com*
                                                  *arman.zahoory@lw.com*
11
                                                  Mark S. Mester (*pro hac vice*)
12                                                330 North Wabash Avenue, Suite 2800
                                                  Chicago, Illinois 60611
13                                                Telephone: (312) 876-7700
                                                  Facsimile: (312) 993-9767
14                                                *mark.mester@lw.com*

15                                            *Attorneys for Defendant Apple Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................................1

II.    BACKGROUND ................................................................................................................3

       A.     The Apple Products at Issue ....................................................................................3
       B.     The "Spectre" and "Meltdown" Vulnerabilities .....................................................4
       C.     The Mitigation and Disclosure of Spectre and Meltdown .....................................4
       D.     Lawsuits Based on Spectre and Meltdown .............................................................5

III.   ARGUMENT ......................................................................................................................6

       A.     Legal Standard ........................................................................................................6
       B.     Plaintiffs Have Not Stated Any Fraud-Based Claims .............................................7

              1.     Plaintiffs Have Not Alleged an Actionable Misstatement ...........................7
              2.     Plaintiffs Have Not Alleged Reliance ........................................................16
              3.     Plaintiffs Have Not Alleged Damages .......................................................18

       C.     Plaintiffs Are Not Entitled to Equitable Relief ....................................................19

              1.     Plaintiffs' Equitable Claims Are Barred by *Sonner* ..................................19
              2.     Plaintiffs' UCL Claim Suffers Additional Dispositive Flaws ...................21
              3.     Plaintiffs Have No Unjust Enrichment Claim ............................................22

       D.     Plaintiffs' Claims Should Be Dismissed With Prejudice ......................................24

IV.    CONCLUSION .................................................................................................................25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Cole Haan, LLC*,
    No. SACV 20-913 JVSDFMX, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ......................20

*Ahern v. Apple Inc.*,
    411 F. Supp. 3d 541 (N.D. Cal. 2019) .....................................................................................11

*In re Apple Inc. Device Performance Litig.*,
    347 F. Supp. 3d 434 (N.D. Cal. 2018) ...................................................................8, 9, 14, 18

*In re Apple Inc. Device Performance Litig.*,
    386 F. Supp. 3d 1155 (N.D. Cal. 2019) ..................................................................................14

*In re Apple Processor Litig.*,
    832 F. App'x 507 (9th Cir. 2020) .......................................................................................6, 18

*In re Arris Cable Modem Consumer Litig.*,
    No. 17-CV-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ....................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................7

*Backhaut v. Apple Inc.*,
    No. 14-CV-02285-LHK, 2015 WL 4776427 (N.D. Cal. Aug. 13, 2015), *aff'd*,
    723 F. App'x 405 (9th Cir. 2018) .........................................................................................21

*Baltazar v. Apple Inc.*,
    No. C 10-03231 WHA, 2011 WL 6747884 (N.D. Cal. Dec. 22, 2011) ...................................9

*Barrett v. Apple Inc.*,
    No. 5:20-CV-04812-EJD, 2021 WL 827235 (N.D. Cal. Mar. 4, 2021) ...........................16, 20

*Berenblat v. Apple Inc.*,
    No. 08-4969 JF (PVT), 2009 WL 2591366 (N.D. Cal. Aug. 21, 2009) ..................................23

*Berkla v. Corel Corp.*,
    302 F.3d 909 (9th Cir. 2002) .................................................................................................23

*Brace v. Rite Aid Corp.*,
    No. 10-cv-290-LM, 2011 WL 635299 (D.N.H. Feb. 14, 2011) ............................................13

*Colman v. Theranos, Inc.*,
    325 F.R.D. 629 (N.D. Cal. 2018)...........................................................................................17

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) ................................................................7

*Cottle v. Plaid Inc.*,
  No. 20-CV-03056-DMR, 2021 WL 1721177 (N.D. Cal. Apr. 30, 2021)..............................21

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)................................................................20

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ................................................................24

*Ferranti v. Hewlett Packard Co.*,
  No. 5:13-CV-03847-EJD, 2015 WL 5302674 (N.D. Cal. Sept. 10, 2015)..........................10

*Gold v. Lumber Liquidators, Inc.*,
  No. 14-CV-05373-TEH, 2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) ..............................7

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................22

*Hall v. Sea World Entm't, Inc.*,
  No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) .................16, 17

*Haskins v. Symantec Corp.*,
  No. 13-CV-01834-JST, 2014 WL 2450996 (N.D. Cal. June 2, 2014), *aff'd*,
  654 F. App'x 338 (9th Cir. 2016) ................................................................17

*Hassell v. Uber Techs., Inc.*,
  No. 20-cv-04062-PJH, 2020 WL 7173218 (N.D. Cal. Dec. 7, 2020)....................................21

*Hauck v. Advanced Micro Devices, Inc.*,
  816 F. App'x 39 (9th Cir. 2020) ................................................................1, 22

*Hauck v. Advanced Micro Devices, Inc.*,
  No. 18-CV-00447-LHK, 2018 WL 5729234 (N.D. Cal. Oct. 29, 2018)........................ *passim*

*Hauck v. Advanced Micro Devices, Inc.*,
  No. 18-CV-00447-LHK, 2019 WL 1493356 (N.D. Cal. Apr. 4, 2019), *aff'd*,
  816 F. App'x 39 (9th Cir. 2020) ................................................................ *passim*

*Herne v. Cooper Indus., Inc.*,
  No. CIV.04-CV-202-SM, 2005 WL 2671540 (D.N.H. Oct. 19, 2005) ..................................7

*Herremans v. BMW of N. Am., LLC*,
  No. CV 14-02363 MMM PJWX, 2014 WL 5017843 (C.D. Cal. Oct. 3, 2014)....................11

*Hodsdon v. Mars, Inc.*,
  162 F. Supp. 3d 1016 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) ......................11

iii

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ..................................................................................10, 11, 12

*IntegrityMessageBoards.com v. Facebook, Inc.*,
   No. 18-CV-05286-PJH, 2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ...................................20

*In re: Intel Corp. CPU Mktg. Sales Practices & Prods. Liab. Litig.*,
   No. 3:18-md-02828-SI, 2021 WL 1198299 (D. Or. Mar. 29, 2021) .............................. *passim*

*In re iPhone 4S Consumer Litig.*,
   No. C 12-1127 CW, 2014 WL 589388 (N.D. Cal. Feb. 14, 2014) ...........................................9

*Jogani v. Superior Ct.*,
   165 Cal. App. 4th 901 (2008) ..............................................................................................23

*Julian v. TTE Tech., Inc.*,
   No. 20-cv-02857-EMC, 2020 WL 6743912 (N.D. Cal. Nov. 17, 2020) ................................20

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...............................................................................................7

*Keegan v. Am. Honda Motor Co.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012) ....................................................................................7

*Knowles v. Arris Int'l PLC*,
   No. 17-CV-01834-LHK, 2019 WL 3934781 (N.D. Cal. Aug. 20, 2019), *aff'd*,
   847 F. App'x 512 (9th Cir. 2021) .........................................................................................12

*Kuhns v. Scottrade, Inc.*,
   868 F.3d 711 (8th Cir. 2017) ...............................................................................................18

*Larin v. Bank of Am. NA*,
   617 F. App'x 651 (9th Cir. 2015) .........................................................................................15

*Lassen v. Nissan N. Am., Inc.*,
   211 F. Supp. 3d 1267 (C.D. Cal. 2016) ................................................................................22

*Lectrodryer v. SeoulBank*,
   77 Cal. App. 4th 723 (2000) ................................................................................................23

*Leider v. Ralfe*,
   387 F. Supp. 2d 283 (S.D.N.Y. 2005)...................................................................................13

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (Cal. Ct. App. 1997) ..........................................................................11

*In re MacBook Keyboard Litig.*,
   No. 5:18-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)................................19

iv

*Marcus v. Apple Inc.*,
    No. C 14-03824 WHA, 2015 WL 151489 (N.D. Cal. Jan. 8, 2015)........................................23

*Morawski v. Lightstorm Entm't, Inc.*,
    599 F. App'x 779 (9th Cir. 2015) ......................................................................................23

*In re Myford Touch Consumer Litig.*,
    No. 13-CV-03072-EMC, 2016 WL 6873453 (N.D. Cal. Nov. 22, 2016) .............................16

*Nordyke v. King*,
    644 F.3d 776 (9th Cir. 2011) .............................................................................................24

*Phillips v. Apple Inc.*,
    No. 15-CV-04879-LHK, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ...........................2, 21

*Pirozzi v. Apple Inc.*,
    913 F. Supp. 2d 840 (N.D. Cal. 2012) ...............................................................................17

*Punian v. Gillette Co.*,
    No. 14-CV-05028-LHK, 2015 WL 4967535 (N.D. Cal. Aug. 20, 2015)........................13, 14

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) .............................................................................................20

*Rojas v. Bosch Solar Energy Corp.*,
    386 F. Supp. 3d 1116 (N.D. Cal. 2019) ..............................................................................24

*Sharma v. Volkswagen AG*,
    No. 20-CV-02394-JST, 2021 WL 912271 (N.D. Cal. Mar. 9, 2021) ..................................2, 19

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .......................................................................................2, 19, 20

*Sponchiado v. Apple Inc.*,
    No. 18-CV-07533-HSG, 2019 WL 6117482 (N.D. Cal. Nov. 18, 2019) ................................7

*Stewart v. Electrolux Home Prods., Inc.*,
    No. 1:17CV01213LJOSKO, 2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) ...........................9

*Sussex Fin. Enter., Inc. v. Bayerische Hypo-Und Vereinsbank AG*,
    460 F. App'x 709 (9th Cir. 2011) ......................................................................................16

*Taleshpour v. Apple Inc.*,
    No. 5:20-CV-03122-EJD, 2021 WL 3037703 (N.D. Cal. July 19, 2021) .......................10, 11

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ......................................................................................................21

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..........................................................................................7, 9

v

*Williamson v. Apple Inc.*,
    No. 5:11-CV-00377 EJD, 2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) .........................10, 14

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ........................................................................................10, 13

*Wofford v. Apple Inc.*,
    No. 11-CV-0034 AJB NLS, 2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) .............................20

*Yastrab v. Apple Inc.*,
    173 F. Supp. 3d 972 (N.D. Cal. 2016) ....................................................................7, 8, 17, 18

## RULES

Federal Rule of Civil Procedure 9(b).............................................................................................7

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................6

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

APPLE'S MOT. TO DISMISS SCAC
Master Docket No. 5:18-CV-00147-EJD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In June 2017, researchers discovered two theoretical security vulnerabilities—"Spectre" and "Meltdown"—that had the potential to affect nearly every smartphone, tablet, computer, and other device with a central processing unit ("CPU"). Even though nobody is alleged to have exploited the vulnerabilities in the real world, lawsuits still followed against CPU manufacturers, including Apple, AMD, and Intel. The lawsuits against other manufacturers have been dismissed, and the Ninth Circuit recently affirmed dismissal of claims against AMD based on the lack of actionable defects, misstatements, omissions, and reliance, and damages. *See Hauck v. Advanced Micro Devices, Inc*., 816 F. App'x 39, 43 (9th Cir. 2020).

Here, Plaintiffs allege seven causes of action, seeking damages and equitable relief under fraud and unjust enrichment theories. Plaintiffs seek damages for fraud under the California Consumers Legal Remedies Act ("CLRA") (Count I), New York General Business Law ("NY GBL") (Counts IV and V), New Hampshire Consumer Protection Act ("NH CPA") (Count III), and common law (Count VII), as well as equitable restitution for fraud under the California Unfair Competition Law ("UCL") (Count II) and NH CPA (Count III) (collectively, the "Fraud-Based Claims"). Plaintiffs also seek equitable restitution under an unjust enrichment theory (Count VI), as well as an unspecified injunction (Prayer). These claims parallel those brought against the other CPU manufacturers regarding Spectre and Meltdown—so much so that Plaintiffs here conceded before the Ninth Circuit that "the facts presented in this matter are nearly identical to those in *Hauck*."[1] And as in *Hauck*, Plaintiffs' claims should be dismissed.

Plaintiffs' Fraud-Based Claims all fail because Plaintiffs do not allege (a) any affirmative misrepresentation or actionable omission, (b) reliance, or (c) damages. Plaintiffs do not identify any affirmative statement by Apple promising that its devices are immune to security vulnerabilities; Apple never claimed any such thing. Nor did Apple promise its devices would meet any specific security or performance standards, and Plaintiffs do not identify any standard

---

[1] Oral argument audio at 00:15, *Bartling v. Apple Inc.*, No. 19-16720 (9th Cir. Nov. 18, 2020), https://www.ca9.uscourts.gov/media/audio/?20201118/19-16720/ ("9th Cir. Audio").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

APPLE'S MOT. TO DISMISS SCAC
Master Docket No. 5:18-CV-00147-EJD

that their devices did not meet. To the contrary, Apple warned that it would not disclose newly discovered vulnerabilities until it could investigate and patch them, and that efforts to mitigate future vulnerabilities could cause their devices to lose features. Plaintiffs also do not identify any actionable omission, as Plaintiffs do not plead a duty on Apple's part to disclose the vulnerabilities any earlier than it did—or suggest how forcing Apple to immediately disclose security issues rather than patching them first would protect consumers better. On top of this, Plaintiffs do not plead any facts supporting reliance or damages, as no Plaintiff alleges that they even saw the statements pled in the Second Consolidated Amended Complaint ("SCAC") at all, let alone relied on them in a way that caused them concrete harm.

Plaintiffs' claims for equitable relief are all barred by the Ninth Circuit's recent decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). In *Sonner*, the Ninth Circuit held "that the traditional principles governing equitable remedies in federal courts" apply to any state law claims brought in federal court. *Id.* That means, to obtain restitution or injunctive relief, Plaintiffs must plead that they lack an adequate legal remedy, and, for injunctive relief, they must additionally plead that they will otherwise suffer an irreparable injury. *See id.* at 839 n.2, 844-45; *see also Sharma v. Volkswagen AG*, No. 20-CV-02394-JST, 2021 WL 912271, at *7 (N.D. Cal. Mar. 9, 2021) (granting motion to dismiss equitable claims). Plaintiffs cannot make that showing: Plaintiffs contend their legal claims for money damages are appropriate, thereby conceding that Plaintiffs have an adequate remedy at law (barring restitution and injunctive relief), and do not explain how they face a risk of irreparable injury given that, as Plaintiffs concede, Apple has released patches for the vulnerabilities (further barring injunctive relief). Accordingly, Plaintiffs' UCL and unjust enrichment claims should be dismissed in their entirety along with their requests for restitution under the CLRA and NH CPA.

In addition, Plaintiffs' UCL claim fails for the independent reasons that (a) they do not plead statutory standing under the UCL because they have not alleged "actual reliance," *Phillips v. Apple Inc.*, No. 15-CV-04879-LHK, 2016 WL 1579693, at *6-7 (N.D. Cal. Apr. 19, 2016), and (b) Plaintiffs have not adequately pled the "fraudulent," "unlawful," or "unfair" prongs of the statute. And Plaintiffs' "unjust enrichment" claim is additionally flawed because unjust enrichment

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

1  is not a cause of action in California, and, in any event, any implied or quasi-contract theory of

2  recovery is barred by the parties' express contracts—including the warranties that apply to all

3  devices at issue, *see* Exs. A & B.[2] Indeed, Plaintiffs brought warranty claims in prior complaints

4  but dropped them in the SCAC after Apple noted the warranties barred many other claims.

5      Because Plaintiffs have not stated a claim despite multiple chances over the past three-plus

6  years, including in response to Apple's last two motions to dismiss, and because claims against

7  other CPU manufacturers failed on what Plaintiffs characterize as "nearly identical facts,"

8  amendment would be futile. Apple respectfully requests dismissal of the SCAC with prejudice.

9  **II.    BACKGROUND**

10     **A.    The Apple Products at Issue**

11     Plaintiffs seek to represent a class of everyone who bought or leased any of dozens of

12  models of iPhones, iPads, iPods, and Apple TVs since 2010. *See* SCAC ¶ 1. Each device at issue

13  includes both hardware (*i.e.*, the physical product, in each case including one of more than a dozen

14  different CPUs) and software (*i.e.*, the iOS or tvOS operating system and applications). *See* Exs.

15  A & B. Both hardware and software are covered by warranties, and Apple informs consumers that

16  Apple provides software on an "'as is' and as 'available'" basis "with all faults and without

17  warranty of any kind," Ex. B at 6 § 7.3, and that updates and other downloads, "if any, may not . . .

18  include all existing software features . . . .," *id*. at 1 § 1(b).

19     Plaintiffs allege that Apple advertised each new generation of CPU in the devices at issue

20  here as relatively faster than the last—for example, by stating that the A11 Bionic chip in the

21  iPhone 8 and 8 Plus was "70 percent faster than the A10 Fusion"—but without pointing to any

22  specific performance standards for any product. SCAC ¶ 97; *see also id.* ¶ 90 (press release stating

23  that the "iPhone 5s is faster and better than ever"). Plaintiffs also claim that Apple "touted the

24

25

---

26  [2] All "Ex." references are to exhibits to the Declaration of Grant E. Strother filed herewith. The
27  exhibits are referenced for background. Apple's motion to dismiss ("Motion") does not depend on
   these materials, and the Court need not make factual determinations to resolve this Motion.
28  Plaintiffs allegations, which Apple does not admit and treats as true only for the purpose of this
   Motion, fail to state a claim.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

security" of its products by, for example, stating that it "build[s] iPhone[s] with your privacy in mind" and included "improvements" to "keep[] your iPhone secure." *Id.* ¶¶ 111-12.

### B.     The "Spectre" and "Meltdown" Vulnerabilities

Plaintiffs' claims focus on two security vulnerabilities nicknamed "Spectre" and "Meltdown," along with Apple's efforts to remedy them. Plaintiffs allege Spectre and Meltdown were "discovered" in 2017, when Google Project Zero—a full-time team of security researchers tasked with finding "zero-day," *i.e.*, previously unknown, vulnerabilities—developed proofs of concept. SCAC ¶ 80; *see also* Ex. F at 1, 6; Ex. G at 7; Ex. E. Spectre and Meltdown are just two of the scores of vulnerabilities that security researches and the broader computing industry identify and address each year. *See, e.g.*, Ex. C at 3-14; Ex. D at 33; Ex. E; Ex. H.

Spectre and Meltdown arise out of two processor "optimization techniques— (1) 'speculative execution' and (2) 'out-of-order execution.'" SCAC ¶ 30. These techniques allow CPUs to operate more quickly by proactively completing actions based on educated guesses about what a user will do next and by reordering actions more efficiently. *See id.* ¶ 31. In some circumstances, Spectre and Meltdown made it theoretically possible to improperly access certain preemptively retrieved data or glean information from the timing of processor actions. *Id.* ¶ 32.

Given the pervasiveness of these optimization techniques, Spectre and Meltdown affect "all modern processors and affect nearly all computing devices and operating systems." *Id.* ¶ 53; *see* Exs. G-H. When Spectre and Meltdown were discovered, every CPU manufacturer had to take steps to mitigate the vulnerabilities and prevent any real-world exploits.

### C.     The Mitigation and Disclosure of Spectre and Meltdown

To avoid security issues that it discovers from being exploited before they can be patched, Project Zero follows a "coordinated disclosure" process. *See* Ex. F at 6. The vulnerabilities are only publicly disclosed when the manufacturer has identified a solution or when a time limit set by Project Zero runs out. The federal government endorses coordinated disclosure to protect consumers from bad actors' exploiting issues before they can be remedied. Ex. D at 2.

This approach was followed for Spectre and Meltdown: when Project Zero disclosed Spectre and Meltdown to manufacturers, it required manufacturers to execute agreements

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

prohibiting them from disclosing the information they received. *Id.* Project Zero first imposed an August 2017 deadline for public disclosure, but in recognition of the complexity of Spectre and Meltdown, it extended the deadline to January 9, 2018. *See* Ex. F at 2, 6-8, 11.

Apple acted swiftly to design an initial software patch for Meltdown and released it as part of an iOS update on December 2, 2017, as well as an initial software patch for Spectre in an iOS update released on January 8, 2018. *See* SCAC ¶ 54. Before Apple's release of the Spectre patch, however, news of the vulnerabilities was leaked and reported in the *New York Times* on January 3, 2018. *Id.* ¶ 84. As a result, the next day, Apple issued a press release titled, "About Speculative Execution Vulnerabilities in ARM-based and Intel CPUs," which explained the efforts to address the vulnerabilities before they were reported to the public (and would-be wrongdoers). *Id.* ¶ 54.

Plaintiffs do not allege that any Spectre or Meltdown vulnerability at issue has ever been used to illicitly access their (or anyone's) devices. To Apple's knowledge, that has never happened.

**D.      Lawsuits Based on Spectre and Meltdown**

Within days of the *New York Times* article, plaintiffs around the country filed lawsuits against almost every major manufacturer of modern computer processors, affecting essentially every computer, smartphone, tablet, and other device containing a CPU. Claims against Intel and AMD—which, like the claims here, were based on alleged misrepresentations and omissions regarding device security and performance—have been dismissed. *See Hauck v. Advanced Micro Devices, Inc.*, No. 18-CV-00447-LHK, 2019 WL 1493356, at *13-14 (N.D. Cal. Apr. 4, 2019) ("*AMD II*"), *aff'd*, 816 F. App'x 39 (9th Cir. 2020); *In re: Intel Corp. CPU Mktg. Sales Practices & Prods. Liab. Litig.*, No. 3:18-md-02828-SI, 2021 WL 1198299, at *7 (D. Or. Mar. 29, 2021). In both cases, the courts held that the CPU manufacturers did not defraud customers, including because plaintiffs alleged no actionable misstatements or omissions (much less any they relied on), and because plaintiffs did not adequately plead the manufacturers had "pre-purchase knowledge of" defects. *AMD II*, 2019 WL 1493356, at *13; *see In re: Intel*, 2021 WL 1198299, at *11.

Plaintiffs filed the Consolidated Amended Complaint ("CAC") (Dkt. 46) on June 8, 2018, alleging 16 claims, including torts, statutory violations, and breaches of warranty. Ex. I (Dkt. 46). On January 2, 2019, the Court granted Apple's motion on standing grounds but allowed leave to

5

1   amend. Dkt. 66. Due to the dispositive standing deficiencies, the Court stated it "need not address

2   Defendants' legal challenges to individual claims." *Id*. at 9.

3       On February 21, 2019, Plaintiffs filed the SCAC, jettisoning their warranty claims and

4   references to Apple's warranties after Apple pointed out that the warranties undermine Plaintiffs'

5   claims. Dkt. 72. Apple again moved to dismiss, both on standing grounds and because Plaintiffs

6   still had not stated any claim. Dkts. 75, 80. On August 2, 2019, the Court granted Apple's motion

7   without leave to amend due to Plaintiffs' failure to remedy their standing deficiencies. Dkt. 88.

8   Again, the individual claims were not considered, as the focus remained on the "threshold

9   jurisdictional question" of standing. *Id*. at 6.

10      Plaintiffs appealed this Court's order. During oral argument on the appeal, Plaintiffs'

11   counsel stressed that "the facts presented in this matter are nearly identical to those in *Hauck*," a

12   case where the court held there was standing but nonetheless dismissed the plaintiffs' claims for

13   lack of any actionable defects, misstatements, or reliance. 9th Cir. Audio at 00:15. On

14   December 29, 2020, a divided panel of the Ninth Circuit held that "Plaintiffs met [their] modest

15   burden" of showing "one viable basis for standing." *In re Apple Processor Litig*., 832 F. App'x

16   507, 508 (9th Cir. 2020).[3] The majority decision turned on Plaintiffs' allegations of a regression

17   analysis purportedly showing that users overpaid for their devices or suffered a loss in economic

18   value; it did not address Plaintiffs' allegations of reductions in performance. *Id.* The Ninth Circuit

19   declined to consider whether "Apple's Rule 12(b)(6) arguments" provided an alternative basis for

20   dismissal, "leaving that task to the district court on remand" instead. *Id.* at 509.

21   **III.   ARGUMENT**

22       **A.   Legal Standard**

23      A complaint must be dismissed under Rule 12(b)(6) when plaintiffs have not alleged

24   "factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[3] Judge Tashima dissented, stating that he would have affirmed this Court's order. *See id.* at 509 (Tashima, J., dissenting). Judge Tashima observed that Plaintiffs' purported regression analysis "does not separate out how much of the drop in resale value is attributable to the disclosure of the devices' security vulnerability, which is not a concrete, compensable injury," and that the SCAC could not show whether "the patch update lessened or increased the drop in resale value," *i.e.*, "whether the patching tradeoff had a net positive or negative effect." *Id.*

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims sounding in fraud—here, the Fraud-Based Claims under the CLRA (Count I), the UCL (Count II), the NH CPA (Count III), and the NY GBL (Counts IV and V), and for common law fraud (Count VII)—must be pled with particularly in accordance with Rule 9(b). *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).[4]

## B.   Plaintiffs Have Not Stated any Fraud-Based Claims

Each of the Fraud-Based Claims lacks at least three essential elements: an actionable misstatement (made affirmatively or by omission), reliance, and damages. *See Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 977-82 (N.D. Cal. 2016) (stating elements and dismissing UCL and CLRA claims); *see also Gold*, 2015 WL 7888906, at *11 (stating elements and dismissing UCL, CLRA, and NY GBL claims); *Herne v. Cooper Indus., Inc.*, No. CIV.04-CV-202-SM, 2005 WL 2671540, at *3 (D.N.H. Oct. 19, 2005) (interpreting NH CPA).

### 1.   Plaintiffs Have Not Alleged an Actionable Misstatement

#### a.   Plaintiffs Have Not Alleged an Affirmative Misrepresentation

Like the dismissed claims against AMD and Intel over Spectre and Meltdown, the Fraud-Based Claims here depend on alleged misrepresentations regarding the security and performance of products that could have been affected by the vulnerabilities. To plead a fraud claim based on a misrepresentation, Plaintiffs must "set forth what is false or misleading about a statement, and why it is false," and allege "'the who, what, when, where, and how' of the misconducted charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Plaintiffs' affirmative misrepresentation claims all should be dismissed because the press releases and YouTube videos they challenge are too general to be actionable and, in any event, Plaintiffs plead no facts indicating why any of them are false. *See*

---

[4] Plaintiffs have argued that the NY GBL is subject to a "lower" pleading standard under state law, *see* Dkt. 78 at 24, but the Ninth Circuit has held that Rule 9(b) applies to fraud-based claims "irrespective of whether the substantive law at issue is state or federal." *Kearns*, 567 F.3d at 1125 (citation omitted); *see also Gold v. Lumber Liquidators, Inc.*, No. 14-CV-05373-TEH, 2015 WL 7888906, at *12 (N.D. Cal. Nov. 30, 2015) (applying Rule 9(b) to GBL claims); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 957 (C.D. Cal. 2012) (same); *but see Sponchiado v. Apple Inc.*, No. 18-CV-07533-HSG, 2019 WL 6117482, at *6 (N.D. Cal. Nov. 18, 2019) (noting some discord in district courts).

1   *Hauck v. Advanced Micro Devices, Inc.*, No. 18-CV-00447-LHK, 2018 WL 5729234, at \*5 (N.D.

2   Cal. Oct. 29, 2018) ("*AMD I*") (dismissing similar claims about AMD CPUs); *AMD II*, 2019 WL

3   1493356, at \*13-14, *aff'd*, 816 F. App'x 39 (same with prejudice); *In re: Intel*, 2021 WL 1198299,

4   \*12-14 (dismissing similar claims about Intel CPUs).

5       The purported misrepresentations Plaintiffs identify are all "broad statements about

6   improving features and product superiority" that are too general to support a fraud claim. *See In

7   re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 457-58 (N.D. Cal. 2018) (Davila,

8   J.) ("*Apple Device I*") (dismissing fraud-based claims); *AMD I*, 2018 WL 5729234, at \*5, \*9

9   (same). The SCAC alleges that Apple misrepresented product security and performance through

10  press releases and YouTube videos containing statements about "the speed of the Apple

11  Processors," "the security of the iDevices, and the advanced capabilities of the iDevices that are

12  driven by the Processors." *See, e.g.*, SCAC ¶¶ 134-35, 142, 165. But none of the cited press releases

13  or YouTube videos promises any specific speed, performance, or security standard—much less

14  how fast any device could do the two tasks Plaintiffs claim occurred more slowly after Apple

15  patched the vulnerabilities. None suggests that devices would be free from undiscovered security

16  vulnerabilities. And none of the challenged statements even mention *any* iPod or AppleTV devices,

17  or several of the more than a dozen iPhone and iPad models at issue.

18      Statements about Apple products' "remarkable speed and efficiency," "industry-leading

19  performance," and improvements over prior models (SCAC ¶¶ 88-97) are just as general as the

20  alleged misstatements that this Court rejected in *Apple Device I*. There, plaintiffs challenged

21  statements that certain products "performed better than other devices on the market," "at or above

22  the industry standard or performance," "faster and better than ever," and with "performance and

23  graphics up to twice as fast." 347 F. Supp. 3d at 457. Such "broad statements about improving

24  features and product superiority" were simply too "broad . . . to ground Plaintiffs' affirmative

25  misrepresentation claim." *Id.*; *see also Yastrab*, 173 F. Supp. 3d at 979 (dismissing fraud claim

26  based on "general descriptions [of] the iPhone's attributes" that could not be construed as "pre-

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

purchase representations made by Apple about the consistency of these features, after software updates or otherwise").[5]

On top of that, Plaintiffs do not allege a single fact supporting an inference that the statements they challenge were actually false. *See Vess*, 317 F.3d at 1106; *AMD I*, 2018 WL 5729234, at *5, *9. For example, Plaintiffs cite Apple's statement that the A11 Bionic chip in the iPhone 8 and 8 Plus was "70 percent faster than the A10 Fusion" and delivered "up to 30 percent faster graphics performance," SCAC ¶ 97, that Apple claimed to "build iPhone" with user "privacy in mind," *id.* ¶ 112, and that Apple claimed certain iOS improvements would "keep[] your iPhone secure," *id.* ¶ 111. But Plaintiffs do not even assert—let alone plead supporting facts—that the A11 Bionic was not *in fact* relatively faster than the A10 Fusion, that Apple was not *in fact* building iPhones with user privacy "in mind," that the newest versions of iOS did not *in fact* contain security enhancements (or that those enhancements failed to "keep [Plaintiff's] iPhone[s] secure," as Plaintiffs do not claim their devices were ever breached). A misrepresentation claim cannot survive where, as here, Plaintiffs do not plead with particularly facts demonstrating a statement was false. *See Apple Device I*, 347 F. Supp. 3d 457, 458 n.5 (dismissing claim based on statements that certain iPhones have "up to 8 hours of browsing" and "talk time" and "up to 10 hours of video playback time," for failure to allege what was false or misleading); *AMD I*, 2018 WL 5729234, at *5, *9 (dismissing misrepresentation claims in case involving Spectre in absence of "facts explaining why the statements about clock speed" "were false when they were made," even though plaintiffs alleged a "'five to 30 per cent slow down' after patching the computer"); *AMD II*, 2019 WL 1493356, at *14 (same for amended complaint), *aff'd*, 816 F. App'x 39 (9th Cir. 2020).

### b.   Plaintiffs Have Not Alleged an Actionable Omission

Plaintiffs' omissions theory fares no better. To plead an actionable omission under consumer fraud statutes or the common law, Plaintiffs must plead with particularity that Apple

---

[5] *See also In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2014 WL 589388, at *5-6 (N.D. Cal. Feb. 14, 2014) (granting dismissal); *Baltazar v. Apple Inc.*, No. C 10-03231 WHA, 2011 WL 6747884, at *3 (N.D. Cal. Dec. 22, 2011) (same); *cf. Stewart v. Electrolux Home Prods., Inc.*, No. 1:17CV01213LJOSKO, 2018 WL 1784273, at *11 (E.D. Cal. Apr. 13, 2018) (granting dismissal where challenged statement was "not a quantifiable statement" "that can be measured").

9

1   omitted information that it had a duty to disclose. *Williamson v. Apple Inc.*, No. 5:11-CV-00377

2   EJD, 2012 WL 3835104, at *7 (N.D. Cal. Sept. 4, 2012) (dismissing omission claim). Here,

3   Plaintiffs allege that Apple should have revealed *something* more about Spectre and Meltdown at

4   some earlier point—but what more and when remains unclear.[6] What is clear is that Apple did not

5   have a legal duty to reveal the vulnerabilities any earlier than it did. *See AMD II*, 2019 WL

6   1493356, at *10-13, *aff'd*, 816 F. App'x 39 (affirming dismissal of similar claims based on AMD

7   CPUs); *In re: Intel*, 2021 WL 1198299, at *6-7 (dismissing similar claims about Intel CPUs).

8        Apple had no duty to disclose unpatched vulnerabilities earlier: "California courts have

9   generally rejected a broad obligation to disclose" and have found that "a manufacturer's duty to

10  consumers is limited to its warranty obligations absent either an affirmative misrepresentation or

11  a safety issue." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). As Plaintiffs

12  have not adequately pled an affirmative misrepresentation, and Plaintiffs do not allege a safety

13  hazard, the Court need go no further: there is no basis under applicable law to impose a duty to

14  disclose here. Plaintiffs have previously urged the Court to imply a duty under *Hodsdon v. Mars,*

15  *Inc.*, 891 F.3d 857, 863 (9th Cir. 2018), but *Hodsdon* cannot salvage their claims. *Hodsdon* does

16  not overrule *Wilson*, and Plaintiffs' allegations would fail even if it did because Plaintiffs have not

17  adequately pled that Apple omitted information related to the central functionality of the devices

18  at issue or that any of the required *LiMandri* factors is present.

19                    (1) Plaintiffs Have Not Pled a Duty to Disclose Under *Wilson*

20        Under *Wilson*, a manufacturer must disclose information that contradicts prior affirmative

21  statements or presents an unreasonable safety hazard. *See* 668 F.3d at 1141; *Ferranti v. Hewlett*

22  *Packard Co.*, No. 5:13-CV-03847-EJD, 2015 WL 5302674, at *7 (N.D. Cal. Sept. 10, 2015).

23  *Wilson* is "[t]he last direct word from the Ninth Circuit on the subject" and has not been overruled

24  by *Hodsdon* or otherwise. *Taleshpour v. Apple Inc*., No. 5:20-CV-03122-EJD, 2021 WL 3037703,

25

26  _____

27  [6] Plaintiffs' counsel admitted at a prior hearing that publicly announcing security vulnerabilities
    before they are patched is not in consumers' interests but offered no suggestions as to what lesser
    disclosure would be adequate. *See* Dec. 13, 2018 Hr'g Tr. at 45:14-17 ("[T]hey don't have to tip

28  off wrongdoers about how to hack these devices and steal sensitive information in order to still
    make an adequate disclosure").

1    at *6-7 (N.D. Cal. July 19, 2021) (dismissing CLRA claim under *Wilson* standard). As discussed

2    above, none of the affirmative statements Plaintiffs point to is contradicted by the existence of

3    Spectre or Meltdown, and Plaintiffs do not attempt to allege an unreasonable safety hazard, which

4    would require them to plead that the omitted information gives rise to "a risk of *physical* injury."

5    *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJWX, 2014 WL 5017843, at *14

6    (C.D. Cal. Oct. 3, 2014) (emphasis added). Given those failings, the Court need go no further:

7    there is no other basis under applicable law to impose a duty to disclose here.

8                           (2)      Even if *Hodsdon* Applied, Plaintiffs' Claims Would Fail

9            Seeking to leverage post-*Wilson* case law that this Court has fairly characterized as "in

10   some disarray," *Taleshpour*, 2021 WL 3037703, at *5, however, Plaintiffs have asked this Court

11   to find a duty to disclose under *Hodsdon*. Plaintiffs argued that under *Hodsdon*, a duty to disclose

12   exists for material information related to the central functionality of a product if one of the

13   *LiMandri* factors is present—*i.e.*, if the defendant (a) was plaintiffs' fiduciary; (b) had exclusive

14   knowledge of material facts not known to plaintiffs; (c) actively concealed material information;

15   or (d) made partial representations. *See* Dkt. 78 at 11 (citing *Hodsdon*'s discussion of *LiMandri v.*

16   *Judkins*, 52 Cal. App. 4th 326 (Cal. Ct. App. 1997)). To be clear, *Hodsdon* does not overrule

17   *Wilson* and thus cannot impose new duties. But even if *Hodsdon* applied, Plaintiffs' allegations

18   would also fall short because Plaintiffs have not alleged a defect that affects the central

19   functionality of their devices or adequately pled any of the *LiMandri* factors.

20           *First*, under *Hodsdon*, a defect only affects the central functionality of a device when it

21   "renders those products *incapable* of use by any consumer." *Hodsdon*, 891 F.3d at 864 (emphasis

22   added). This is an objective standard, and a high one; *Hodsdon* emphasized that "the central

23   functionality of the product is not based on subjective preferences about a product." *Id.* The duty

24   to disclose is narrow and "does not extend to situations where . . . information may persuade a

25   consumer to make different purchasing decisions." *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016,

26   1026 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018). Defects that do not render a product

27   or service "unusable" do not support a duty to disclose. *See, e.g.*, *Ahern v. Apple Inc.*, 411 F. Supp.

28   3d 541, 568 (N.D. Cal. 2019) (finding no duty to disclose a defect causing screen smudges that did

11

"not render Apple computers unusable," even if they "may appear unreasonable to Plaintiffs"); *Knowles v. Arris Int'l PLC*, No. 17-CV-01834-LHK, 2019 WL 3934781, at *16 (N.D. Cal. Aug. 20, 2019), *aff'd*, 847 F. App'x 512 (9th Cir. 2021) (finding no duty to disclose modem defect that did not render the modem "unusable"). The existence of two theoretical vulnerabilities that are not alleged ever to have been exploited did not render Plaintiffs' devices unusable, and Plaintiffs do not allege otherwise.[7]

Nor can Plaintiffs claim that Apple's mitigation efforts rendered their devices "incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864. Plaintiffs allege only that one iPhone 7, bought after this Court's order dismissing the CAC, was slower to download several apps from the App Store and transfer a video over AirDrop. SCAC ¶¶ 62-63. That device still accomplished the requested tasks, though purportedly more slowly, and Plaintiffs do not allege any task that the single tested iPhone 7 failed to perform—much less any limits on the use of the dozens of other types of devices at issue. In fact, Plaintiffs' counsel scoffed at the suggestion that Plaintiffs would stop using the devices. Dec. 13, 2018 Hr'g Tr. at 34:22-35:1-5 ("Plaintiffs aren't going to stop using cell phones, right? The reality is it's 2018. No one is saying we're going to go off the grid"). And though Plaintiffs claim to have conducted a regression analysis demonstrating that certain iPhones sold for somewhat less after the vulnerabilities were announced and patches were released, their purported analysis still demonstrated a robust market for the products—thousands of purchases that belie any argument that the devices are "unusable." Apple's mitigation efforts are not the alleged "Defects," *see id.* ¶ 2, and Plaintiffs have not alleged how Spectre and Meltdown render the devices "incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864. Plainly, they do not.

---

[7] Plaintiffs in the AMD and Intel cases likewise argued for application of *Hodsdon*, and the courts in both cases concluded that *even if* it applied, the claims still failed because the vulnerabilities did not render products with those manufacturers' chips unusable. Judge Koh explained that plaintiffs pled "no allegation that the basic functionality of the processors has been compromised by the Defect." *AMD II*, 2019 WL 1493356, at *17; *AMD I*, 2018 WL 5729234, at *8 (explaining that Spectre did not cause "AMD processors [to] fail to work at all, or fail to work even a majority of the time"), *aff'd Hauck*, 816 F. App'x 39; *see also In re: Intel*, 2021 WL 1198299, at *7-8 (holding the same result applied for nearly identical allegations against Intel related to Spectre, Meltdown, and other vulnerabilities). If the Court allows Plaintiffs to invoke *Hodsdon*, the same result is required here because Plaintiffs admit that "the facts presented in this matter are nearly identical."

12

*Second*, Plaintiffs fail to plead that any of the four *LiMandri* factors is present. Plaintiffs do not claim that Apple was their fiduciary. Nor do Plaintiffs identify any partial representations, since the only representations they allege are those underlying their deficient affirmative misrepresentation claims. *See supra* Section III.B.1. That leaves two *LiMandri* factors, neither of which Plaintiffs meet: exclusive knowledge and active concealment.

No Exclusive Knowledge: Plaintiffs plead no facts indicating that Apple had actual—let alone *exclusive*—knowledge of the vulnerabilities until June 2017, when Apple learned of them at the same time Project Zero notified every major chip manufacturer. Plaintiffs nevertheless complain that Apple "should have known" and disclosed something about Spectre and Meltdown sooner than it did. *Id.* ¶¶ 5, 80. But allegations about what Apple "should have known" cannot support an omissions claim. *See AMD I*, 2018 WL 5729234, at *6 (stating "it is not enough to allege that a defendant should have known about a defect"). The statutes and common law claims at issue require "*actual knowledge*," so that the omission is not merely negligent, but unfair and deceptive. *See Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2015 WL 4967535, at *9 (N.D. Cal. Aug. 20, 2015) (emphasis added); *see also id.* (stating that "plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale") (quoting *Wilson*, 668 F.3d at 1145).[8]

Plaintiffs' allegations do not support that Apple had any actual knowledge of Spectre and Meltdown before June 2017. Indeed, Plaintiffs admit that Spectre and Meltdown were not *discovered* until mid-2017. *See* SCAC ¶ 80. Apple could not have had actual knowledge (let alone "exclusive knowledge") of Spectre and Meltdown before Project Zero discovered them. Nevertheless, Plaintiffs try to allege Apple's knowledge based on a 1995 "paper published by the Institute of Electrical and Electronic Engineers" that they allege first identified "[t]he theoretical possibility of the Meltdown Defect." *Id.* ¶ 5. But by definition, information in a published paper written by people outside of Apple was neither "exclusive" to nor withheld by Apple. *See In re: Intel*, 2021 WL 1198299, at *7 (holding that academic knowledge of Spectre, Meltdown, and other

---

[8] New York and New Hampshire law likewise require affirmative deception based on actual knowledge. *Leider v. Ralfe*, 387 F. Supp. 2d 283, 294 (S.D.N.Y. 2005); *Brace v. Rite Aid Corp.*, No. 10-cv-290-LM, 2011 WL 635299, at *5 (D.N.H. Feb. 14, 2011).

13

APPLE'S MOT. TO DISMISS SCAC
Master Docket No. 5:18-CV-00147-EJD

defects made those defects "industry knowledge," meaning it could not be the case that "Intel suppressed or concealed" the defects before it released patches); *Apple Device I*, 347 F. Supp. 3d at 462 (dismissing knowledge allegations where facts "were readily accessible to the public"); *AMD I*, 2018 WL 5729234, at *6 (dismissing claims against AMD because "vague, sweeping statements about industry research and general knowledge garnered from conferences and academic papers of [a] potential to exploit processors and gather confidential information" was insufficient to plead knowledge). The same reasoning applies here: publicly available articles about the "theoretical possibility" of a security vulnerability are not sufficient to allege that Apple had actual knowledge of Spectre or Meltdown.[9]

Apple could not have had "exclusive knowledge" of the alleged impact of mitigation efforts either, as Plaintiffs acknowledge that improving performance can sometimes diminish security and vice versa. *See, e.g.*, SCAC ¶ 31. "[C]ommon sense and Plaintiffs' own allegations demonstrate that consumers know about" potential performance impacts of vulnerability mitigations. *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1179 (N.D. Cal. 2019).

<u>No Active Concealment.</u> Active concealment under *LiMandri* requires that a defendant "intentionally concealed or suppressed the fact *with the intent to defraud the plaintiff*." *Punian*, 2016 WL 1029607, at *16 (emphasis added). All Plaintiffs point to in support of this factor is Apple's participation in the Project Zero coordinated disclosure process—and that process could not be further from an "intent to defraud." Aside from being imposed by Project Zero, the coordinated disclosure process is endorsed by the United States Department of Homeland Security ("DHS") because it *protects* consumers from would-be wrongdoers' potential exploitation of vulnerabilities before they can be patched. *See* Ex. D at 2. In any event, Apple *affirmatively disclosed* its policy of not announcing vulnerabilities until they have been patched. This policy

---

[9] Plaintiffs' vague references to changes Apple purportedly adopted for iOS and tvOS in 2012 to "defend against Meltdown," SCAC ¶ 5, also cannot show knowledge. Even setting aside that this allegation contradicts Plaintiffs' own assertion that Meltdown was not even discovered until five years later, *id.* ¶ 80, this allegation is conclusory and insufficient to put Apple on notice, just like a similar allegation in *Williamson v. Apple Inc.*—where plaintiffs alleged "that, '[a]ccording to sources inside and outside Apple,' the company began working to correct the defect"—that this Court found insufficient to plead knowledge. No. 5:11-CV-00377 EJD, 2012 WL 3835104, at *7 (N.D. Cal. Sept. 4, 2012) (granting dismissal).

14

1  appeared on the same website where Plaintiffs allege customers would have seen alleged

2  misrepresentations:

> 3  For our customers' protection, Apple doesn't disclose, discuss, or confirm
> security issues until an investigation has occurred and patches or releases
> 4  are available.

5  Ex. C at 3. Again, this policy is meant to protect users—not defraud them—and tracks DHS

6  guidelines advising that "[r]isks [be] publicized only after practical and effective mitigations are

7  available to users" because "quickly disclosing [vulnerabilities] without review and mitigation

8  only opens the public up to exploit," Ex. D at 2, 7 (explaining that the National Cybersecurity and

9  Communications Integration Center at DHS "works with trusted partners . . . in the . . . private

10  sector[] to coordinate timely and responsible disclosure of vulnerabilities [so that r]isks are

11  publicized only after practical and effective mitigations are available to users"). Apple's

12  compliance with DHS guidelines and its own publicly stated policy to attempt to patch Spectre

13  and Meltdown before disclosing them does not show active concealment. *See, e.g.*, *Larin v. Bank*

14  *of Am. NA*, 617 F. App'x 651, 652 (9th Cir. 2015) (affirming dismissal of consumer fraud claim

15  where defendant "disclosed... its general policy" and proceeded "in the manner disclosed").

16                          *          *          *

17          Plaintiffs plead no viable omission theory to support any of their Fraud-Based Claims—

18  and Plaintiffs' attempt to invoke consumer protection statutes to argue that Apple should have

19  revealed security vulnerabilities that could compromise user data before developing a fix flies in

20  the face of those statutes' very purposes. There is little doubt that consumers would be less

21  "protected" under a rule where security vulnerabilities had to be disclosed to would-be criminals

22  before they could be patched. Indeed, Plaintiffs do not suggest what Apple should have done

23  differently to keep consumers safer—and at the hearing on a prior motion to dismiss, Plaintiffs'

24  counsel could not identify how much earlier Apple should have disclosed the vulnerabilities while

25  also protecting consumers from bad actors who might exploit them. *See* Dec. 13, 2018 Hr'g Tr. at

26  43:19-21 ("I'm not saying at the moment someone, anyone, calls and says 'hey, you have a

27  problem, stop the presses, let's issue a press release.'"); *id.* at 44:6-47:1 (acknowledging "Apple's

28  . . . a little bit between a rock and a hard place"). That is not fraud.

### 2.    Plaintiffs Have Not Alleged Reliance

Plaintiffs' Fraud-Based Claims additionally fail because no Plaintiff has alleged that they actually relied on the alleged misstatements or omissions, and they are not entitled to an inference of reliance. *See Sussex Fin. Enter., Inc. v. Bayerische Hypo-Und Vereinsbank AG*, 460 F. App'x 709, 712 (9th Cir. 2011) (requiring reliance for fraud claim).[10]

#### a.    Plaintiffs Have Not Pled Reliance on any Statement or Omission

To plead reliance on an affirmative misstatement, Plaintiffs must allege that they actually viewed the challenged statements. *See Barrett v. Apple Inc.*, No. 5:20-CV-04812-EJD, 2021 WL 827235, at *11 (N.D. Cal. Mar. 4, 2021) (dismissing fraud claims for lack of reliance where plaintiffs did not allege "that they visited the website, read the disclaimer, or knew about Apple's communications with news media"). Here, no Plaintiff claims to have seen the press releases or YouTube videos that undergird their claims, let alone to have done anything in reliance on them, so any claim based on an affirmative statement fails. *See In re: Intel*, 2021 WL 1198299, at *14 (dismissing similar claims where plaintiffs did not to allege that they saw the misrepresentation).

To plead reliance on an omission, Plaintiffs must allege with particularity how, "if the allegedly omitted material had been disclosed" earlier, they "would have been aware of it and behaved differently." *Hall v. Sea World Entm't, Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *5-6 (S.D. Cal. Dec. 23, 2015). Here, Plaintiffs do not allege how they would have been aware of any disclosure or that they would have behaved differently. Since Plaintiffs do not claim to have seen the YouTube videos and press releases they cite, they cannot allege that they would have been aware of them if they had included different information or that changes to those videos or press releases would have altered their expectations or behavior. *See Barrett*, 2021 WL 827235, at *12 (holding that where "Plaintiffs were unaware of the existing information on the webpage, disclaimer, or in the news report, they cannot argue that the alleged omissions, if available, would have changed Plaintiffs' behavior"). Indeed, Plaintiffs do not identify *any* Apple

---

[10] Plaintiffs have argued that reliance is not an element of their New York claims, Dkt. 78 at 24, but that is not correct. *See In re Myford Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2016 WL 6873453, at *4 (N.D. Cal. Nov. 22, 2016) (finding no "meaningful difference in the requirements of the New York statute and those of other states that require reliance").

1    materials that they reviewed before buying their devices, let alone explain how or where Apple

2    should have disclosed the vulnerabilities in a way that would have changed their actions—nor

3    could they, since Plaintiffs do not allege that there were vulnerability-free alternatives that they

4    could have purchased instead of their devices (there were not), and Plaintiffs' counsel admitted

5    that "Plaintiffs aren't going to stop using cell phones[.]" Dec. 13, 2018 Hr'g Tr. at 35:1-5.

6                    b.    <u>Plaintiffs Are Not Entitled to an Inference of Reliance</u>

7            Unable to "provide the particulars of [their] own experience reviewing or relying upon any

8    of those statements" that they contend contain misrepresentations, *Pirozzi v. Apple Inc.*, 913 F.

9    Supp. 2d 840, 850 (N.D. Cal. 2012), Plaintiffs have tried to invoke a line of cases allowing an

10   inference of reliance where plaintiffs have been exposed to long-term advertising campaigns. *See*

11   Dkt. 78 at 20-21. But this is a presumption that applies only to "extraordinary cases of intense,

12   long-term advertising campaigns," *Colman v. Theranos, Inc.*, 325 F.R.D. 629, 642 (N.D. Cal.

13   2018), and to invoke it, Plaintiffs must still plead with particularly that the statements were actually

14   part of a long-term advertising campaign *and* that they saw that campaign. *See Yastrab*, 173 F.

15   Supp. 3d at 980. Plaintiffs' allegations are too conclusory to meet either prong.

16           *First*, Plaintiffs do not even assert that any particular statement at issue was part of a "long-

17   term advertising campaign," let alone offer supporting facts. *Colman*, 325 F.R.D. at 642. The only

18   statements Plaintiffs cite are a handful of YouTube videos and several press releases. SCAC ¶¶ 87-

19   112. These are not the broadly distributed, passively consumed television commercials or other

20   types of advertisements capable of supporting the inference of reliance that Plaintiffs seek; on the

21   contrary, they are the types of materials that consumers must actively seek out and that courts

22   regularly hold do not constitute a widespread campaign. *See, e.g.*, *Hall*, 2015 WL 9659911, at *4

23   ("statements . . . not even made in advertisements, let alone as part of a pervasive advertising

24   campaign" cannot support an inference of reliance); *Haskins v. Symantec Corp.*, No. 13-CV-

25   01834-JST, 2014 WL 2450996, at *2-3 (N.D. Cal. June 2, 2014), *aff'd*, 654 F. App'x 338 (9th Cir.

26   2016) ("an average consumer would be unlikely to read" "press releases").

27           *Second*, Plaintiffs do not allege that they were actually exposed to the alleged advertising

28   campaigns containing the alleged misrepresentations or omissions. *See Yastrab*, 173 F. Supp. 3d

                                                    17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

at 980 (holding that a plaintiff who "plead[s] a long-term advertising campaign" is not "excused from complying with the" requirement of alleging individual exposure to the allegedly misleading advertising statements). Generally alleging the existence of an advertising campaign does not satisfy Plaintiffs' obligation "to plead separately and with particularity" the "statements the[y] … actually saw and relied upon." *Apple Device I*, 347 F. Supp. 3d at 458. Here, no Plaintiff alleges that they viewed the press releases or YouTube videos that they cite, so they cannot invoke an "extraordinary" inference of reliance. *See Yastrab*, 173 F. Supp. 3d at 978.

### 3.    Plaintiffs Have Not Alleged Damages

While the Ninth Circuit majority held that Plaintiffs' regression analysis for certain iPhones satisfied their "modest burden" to plead standing under Article III, 832 F. App'x at 508, Plaintiffs still must plead damages with particularity—and they have not done so. *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017) (finding standing satisfied, but dismissing claims for failure to state a claim for damages); *see AMD II*, 2019 WL 1493356, at *18 (finding standing but dismissing nearly identical claims where "conclusory, element-mirroring allegation that [plaintiff] would have paid less for the processor had she known of any security vulnerability" did not meet federal pleading standards).

The SCAC's conclusory list of injury theories, without any attempt to shore them up with facts, is not enough to plead concrete damages here. Plaintiffs claim that they would not have purchased their devices, that they would have paid less for them, that they received devices that "suffered from the Defects such that their personal and confidential information was not secure," that the diminished performance of their devices made the devices less valuable, and that "Apple's conduct" "decreased [the] market value" of their devices. SCAC ¶¶ 137, 178. But Plaintiffs do not allege that they would (or even could) have switched to another device or explain how they could have paid a lower price for the same device. Nor do Plaintiffs allege that their devices, let alone their "personal and confidential information," were actually accessed as a result of Spectre or Meltdown. Moreover, as the Court has repeatedly observed, Plaintiffs do not claim they personally experienced degraded performance of their own devices. Dkt. 88 at 8-10. And while Plaintiffs offer a regression analysis of the secondary market for some used iPhones, no Plaintiff claims to

have sold his or her device (or even that they tried or intended to sell their device). Quite simply, there are no concrete, cognizable damages here. *See AMD II*, 2019 WL 1493356, at *18.

## C.   Plaintiffs Are Not Entitled to Equitable Relief

### 1.   Plaintiffs' Equitable Claims Are Barred by *Sonner*

Plaintiffs' equitable claims—for equitable restitution under the UCL (Count II), CLRA (Count I), NH CPA (Count III), and a quasi-contract unjust enrichment theory (Count VI), as well as for an unspecified injunction—should all be dismissed because Plaintiffs do not meet the federal requirements for equitable relief, as they must under the Ninth Circuit's recent decision in *Sonner*. *See* 971 F.3d at 844-45. In *Sonner*, the Ninth Circuit held "that the traditional principles governing equitable remedies in federal courts" apply to state court claims brought in federal court, even if the state's own courts could provide equitable relief without satisfying those principles.[11] *Id.* at 844-45. That means that Plaintiffs must plead they "lack[] an adequate legal remedy," *id.* at 839 n.2, in order to obtain restitution or an injunction, and must additionally plead irreparable harm for an injunction. *Sonner* has been repeatedly applied to grant motions to dismiss claims for restitution under the UCL, CLRA, and quasi-contract as well as claims for injunctive relief were, as here, the plaintiff cannot plead that they lack an adequate remedy. *See*, *e.g.*, *Sharma*, 2021 WL 912271, at *7 (dismissing CLRA, UCL, and unjust enrichment claims); *In re MacBook Keyboard Litig.*, 5:18-cv-02813-EJD, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020) (dismissing UCL claims).[12]

Plaintiffs have not alleged that they lack an adequate remedy at law to justify obtaining restitution under the UCL, CLRA, or quasi-contract principles such as unjust enrichment.[13] Nor

---

[11] *Sonner* dealt with California state law claims, but its holding—that there are fundamental constraints on federal courts' equitable powers that no state law may relax—applies equally to Plaintiffs' equitable claims under the NH CPA. The Ninth Circuit was clear that, while "'a State may authorize its courts to give equitable relief unhampered by' the 'restriction[]' that an adequate remedy at law be unavailable," state law "cannot remove th[at] fetter[] from the federal courts." *Id.* at 843-44; *see also id.* at 839 ("It has long been the province of federal courts sitting in equity to apply a body of federal common law *irrespective of state law*.") (emphasis added).

[12] Equitable claims against Intel based on Spectre and Meltdown were dismissed under *Sonner*, but the AMD dismissal predated *Sonner*. *See In re: Intel*, 2021 WL 1198299, at *11 (dismissing nearly identical UCL and unjust enrichment claims based on Intel CPUs).

[13] The SCAC asserts in the "Unjust Enrichment/Restitution" claim that Plaintiffs are left "without an adequate remedy at law," SCAC ¶ 171, but that is conclusory. *See Barrett*, 2021 WL 827235,

1   could they: Plaintiffs' requests for restitution are meant to compensate for the "exact same harm,"

2   *Sonner*, 971 F.3d at 844, for which they seek money damages through their other claims—*i.e.*,

3   being induced to buy more devices and/or overpay for them. *Compare* SCAC ¶ 146 (relief sought

4   for UCL claim), *with id.* ¶¶ 177-78 (relief sought for consumer fraud claims). Such claims for

5   "monetary damages" are prime examples of "remedies available at law," *eBay Inc. v.*

6   *MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), and thus preclude restitution under the UCL and

7   CLRA, *see Sonner*, 971 F.3d at 844; *see also Julian v. TTE Tech., Inc.*, No. 20-cv-02857-EMC,

8   2020 WL 6743912, at *5 (N.D. Cal. Nov. 17, 2020) (dismissing UCL claim under *Sonner* because

9   "what Plaintiffs' claim for damages and restitution [we]re not really different").

10        *Sonner* also bars Plaintiffs' request for injunctive relief. *See IntegrityMessageBoards.com*

11   *v. Facebook, Inc.*, No. 18-CV-05286-PJH, 2020 WL 6544411, at *4 (N.D. Cal. Nov. 6, 2020)

12   (holding that *Sonner* "unequivocally applies to any request for equitable relief"). Under federal

13   law, "a plaintiff seeking a permanent injunction must" do more than show "that remedies available

14   at law . . . are inadequate," they must also allege "that it has suffered an irreparable injury." *eBay*,

15   547 U.S. at 391. Plaintiffs have not pled the requisite irreparable harm, nor could they: Apple

16   already patched the vulnerabilities, and their alleged injury is purely economic. *See Wofford v.*

17   *Apple Inc.*, No. 11-CV-0034 AJB NLS, 2011 WL 5445054, at *3 (S.D. Cal. Nov. 9, 2011)

18   ("[i]njunctive relief is inappropriate as well because [Apple] remedied the software defect... when

19   it released a patch"); *see also Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944

20   F.2d 597, 603 (9th Cir. 1991) ("economic injury alone does not support a finding of irreparable

21   harm."). Since money could make Plaintiffs whole, they cannot establish that irreparable injury.

22   *See, e.g.*, *Adams v. Cole Haan, LLC*, No. SACV 20-913 JVSDFMX, 2020 WL 5648605, at *3

23   (C.D. Cal. Sept. 3, 2020) (concluding under *Sonner* that "lost money" from overpaying for a

24   product was not an "irreparable injury"); *Hassell v. Uber Techs., Inc.*, No. 20-cv-04062-PJH, 2020

25   WL 7173218, at *9 (N.D. Cal. Dec. 7, 2020) (similar).

26

27

28     at *18 (conclusory allegation insufficient to establish an inadequate legal remedy). And no similar
  allegation is made for or incorporated by reference into the UCL or CLRA claims.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Because Plaintiffs do not adequately plead that they lack a remedy at law (and cannot do

2   so in the face of their alleged legal claims), the Court should dismiss Plaintiffs' claims for

3   restitution under the UCL, CLRA, NH CPA, and their unjust enrichment theory, and any request

4   for injunctive relief.

### 2.   Plaintiffs' UCL Claim Suffers Additional Dispositive Flaws

6   Plaintiffs' UCL claim also fails on its merits. As a threshold matter, Plaintiffs do not plead

7   statutory standing. To bring a UCL claim, a plaintiff must have "suffered injury in fact and [] lost

8   money or property as a result of the unfair competition," which requires, for a fraud-based claim,

9   that the plaintiff establish actual reliance on the alleged misrepresentation or omission. *See In re*

10  *Tobacco II Cases*, 46 Cal. 4th 298, 325 (2009) (holding that actual reliance is required for statutory

11  standing under the UCL); *see also In re Arris Cable Modem Consumer Litig.*, 17-CV-01834-LHK,

12  2018 WL 288085, at *6 (N.D. Cal. Jan. 4, 2018) (same standard applies to other UCL prongs

13  "when the 'unfair competition' underlying a plaintiff's UCL claim consists of a defendant's

14  misrepresentation" (citations omitted)). As discussed in Section III.B.2, Plaintiffs fail to allege

15  with particularity that they actually relied on the alleged misrepresentations and omissions, which

16  dooms their UCL standing. *See, e.g.*, *Phillips*, 2016 WL 1579693, at *6-7 (no UCL standing where

17  "careful reading of the [complaint] reveals that Plaintiffs do not allege that they saw or heard any

18  statements, advertising, terms of use, or other representations by Apple"). Indeed, the UCL

19  standing requirement is more "stringent" or "narrow" than Article III, and other courts have found

20  Article III standing satisfied and still dismissed for failure to satisfy UCL standing. *See Backhaut*

21  *v. Apple Inc.*, No. 14-CV-02285-LHK, 2015 WL 4776427, at *7 (N.D. Cal. Aug. 13, 2015), *aff'd*,

22  723 F. App'x 405 (9th Cir. 2018) (finding Article III standing but dismissing UCL claim for failure

23  "to allege that [plaintiffs] lost money or property"); *Cottle v. Plaid Inc.*, No. 20-CV-03056-DMR,

24  2021 WL 1721177, at *12 (N.D. Cal. Apr. 30, 2021) (same).

25  Plaintiffs also have not stated a UCL claim under any of the three UCL "prongs"—fraud,

26  unfairness, or unlawfulness—on which they rely. *See* SCAC ¶¶ 139-146. Plaintiffs' "fraud" prong

27  claim, that Apple "ma[de] misleading statements and/or omit[ted] material facts concerning its

28  Processors," *id.* ¶ 142, fails because Plaintiffs have not alleged a misstatement or omission, *see*

21

*supra* Sections III.B.1-2. Likewise, Plaintiffs' "unlawful" prong claim is based on a predicate violation of the CLRA, SCAC ¶ 141, but Plaintiffs have not stated a CLRA claim, *see supra* Section III.B.

Plaintiffs' "unfair" prong claim is conclusory, consisting of a boilerplate recitation of the unfair prong test with no allegations of the specific practice alleged to be unfair. *See* SCAC ¶ 145 (alleging only that "Defendant's conduct . . . also constitutes unfair business acts or practices because such conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers"). At best, the SCAC generally claims that Apple allegedly (a) designed products that traded some degree of security for some degree of performance, and/or (b) did not disclose that it had done so. *See id.* ¶ 32. To the extent that Plaintiffs' unfair prong claim is based on product design, that is just a products liability claim in disguise. When, as here, there is no allegation of personal injury, property damage, or even breach of warranty, California courts hold that such claims do not satisfy the UCL "unfairness" prong. *See Hauck*, 816 F. App'x at 43 (affirming dismissal of UCL claim in absence of allegation "that the harm represented by the theoretical risk of a cybersecurity flaw that has not yet been successfully exploited outweighs the other benefits of AMD's processor design"); *see also Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1288 (C.D. Cal. 2016) ("where, as here, the product functions as designed so its alleged 'defectiveness' "can only be established by the retrospective standards of products liability law, that 'defectiveness' cannot also establish a defect for purposes of consumer fraud law").

To the extent Plaintiffs' unfair prong claim is based on the failure to disclose a supposed product defect, it overlaps entirely with their fraud-based claims and thus must be dismissed. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017) ("[W]here the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive.").

### 3.     Plaintiffs Have No Unjust Enrichment Claim

Plaintiffs assert an "unjust enrichment" claim, SCAC ¶¶ 167-72, even though "unjust enrichment is not a cause of action" in California, *Jogani v. Superior Ct.*, 165 Cal. App. 4th 901,

22

1   911 (2008). *See also Berenblat v. Apple Inc.*, No. 08-4969 JF (PVT), 2009 WL 2591366, at *6

2   (N.D. Cal. Aug. 21, 2009) (granting dismissal because "unjust enrichment is not a cause of

3   action"). In prior briefing, Plaintiffs framed their "unjust enrichment" claim as a quasi-contract or

4   restitution claim. *See* Dkt. 78 at 25. But in addition to *Sonner*'s barring such equitable relief, *see*

5   Section III.C.1, any quasi-contract or restitution theory fails here because it is barred by the parties'

6   express contract. Under California law "[t]here cannot be a valid, express contract and an implied

7   contract, each embracing the same subject matter, existing at the same time." *Berkla v. Corel*

8   *Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) (citation omitted). Because express contracts govern

9   Apple's sale of the hardware (Hardware Warranty) and licensing of the software (Software

10  License) at issue, any quasi-contract claim must be dismissed. *See, e.g.*, *Marcus v. Apple Inc.*,

11  No. C 14-03824 WHA, 2015 WL 151489, at *10 (N.D. Cal. Jan. 8, 2015) (dismissing quasi-

12  contract claim alleging product defects based on Apple's express warranties).

13          After Apple moved to dismiss the unjust enrichment claim in the CAC on that basis (which

14  the Court did not reach), Plaintiffs dropped their breach of warranty claims in the SCAC and

15  excised any references to the warranties. *See* Dkts. 49, 56, 59. When Apple made the same

16  argument in its prior motion to dismiss the SCAC, Plaintiffs claimed that the Hardware Warranty

17  and Software License do not expressly give Apple "immunity from unjust enrichment claims."

18  Dkt. 78 at 25. That misses the point. An express contract will bar a quasi-contract claim where the

19  contract "cover[s] the same subject matter," *Morawski v. Lightstorm Entm't, Inc.*, 599 F. App'x

20  779, 780 (9th Cir. 2015) (citation omitted), and here, there is no reasonable dispute that the

21  Hardware Warranty and Software License apply to the physical and software components of the

22  devices that Plaintiffs claim were defective.

23          *Second*, Plaintiffs are not entitled to restitution because they have not alleged that Apple

24  unjustly retained a benefit at their expense. *See Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723,

25  726 (2000) (requiring "receipt of a benefit and unjust retention of the benefit at the expense of

26  another") (citations omitted). The SCAC repeats the same conclusory allegations that Plaintiffs

27  overpaid Apple for their devices and that it would be unjust for Apple to retain the proceeds of

28  those purchases. SCAC ¶¶ 169-71. But since Plaintiffs' devices were never intruded upon as a

23

result of Spectre or Meltdown, their only alleged injuries stem from Apple's efforts to mitigate the vulnerabilities—efforts made subject to the warning in the Apple Software License that Apple does not warrant that "defects in the product will be corrected" but that updates and other downloads, "if any, may not . . . include all existing software features[.]" Ex. B at 1 § 1(b). Plaintiffs have not alleged how Apple benefitted at their expense from those mitigations, much less unjustly. *See, e.g.*, *Rojas v. Bosch Solar Energy Corp.*, 386 F. Supp. 3d 1116, 1131 (N.D. Cal. 2019) (dismissing quasi-contract claim based on conclusory allegation of unjust receipt of benefit). Rather, Apple was acting swiftly to protect Plaintiffs and other consumers by preventing bad actors from exploiting the vulnerabilities and accessing their user data, in accordance with its publicly disclosed policy not to "disclose, discuss, or confirm security issues until an investigation has occurred and patches or releases are available." Ex. C at 3. That is not unjust.

### D.      Plaintiffs' Claims Should Be Dismissed With Prejudice

Plaintiffs rushed to Court with their first complaint mere days after news of Spectre and Meltdown broke, even though their devices were not breached, they never personally experienced any performance impact as a result of Apple's mitigation efforts, and they did not rely on any statement from Apple in purchasing their devices. Despite multiple opportunities over the years since—this is the third motion to dismiss to raise these same issues—Plaintiffs still have not pled the basic elements of their claims. Essentially the same claims against AMD and Intel have been dismissed, and the Ninth Circuit already affirmed dismissal for AMD in the *Hauck* case. *See AMD II*, 2019 WL 1493356, at *13-14, *aff'd Hauck*, 816 F. App'x at 43; *In re: Intel*, 2021 WL 1198299, at *7. Particularly in light of Plaintiffs' counsel's admission that "the facts presented in this matter are nearly identical to those in *Hauck*," it is clear that the SCAC cannot be "saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The SCAC should be dismissed with prejudice. *See Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) ("leave to amend . . . need not be granted when the proposed amended is futile.").

IV.     CONCLUSION

        For the foregoing reasons, Apple respectfully requests that the Court dismiss the SCAC
with prejudice.

DATED: August 31, 2021                    LATHAM & WATKINS LLP

                                          By:    /s/ Melanie M. Blunschi
                                                 Melanie M. Blunschi (CA Bar No. 234264)
                                                 Grant E. Strother (CA Bar No. 258506)
                                                 505 Montgomery Street, Suite 2000
                                                 San Francisco, CA 94111-6538
                                                 Telephone: +1.415.391.0600
                                                 Facsimile: +1.415.395.8095
                                                 melanie.blunschi@lw.com
                                                 grant.strother@lw.com

                                                 Matthew Rawlinson (CA Bar No. 231890)
                                                 Arman Zahoory (CA Bar No. 306421)
                                                 140 Scott Drive
                                                 Menlo Park, CA 94025-1008
                                                 Telephone: +1.650.328.4600
                                                 Facsimile: +1.650.463.2600
                                                 matt.rawlinson@lw.com
                                                 arman.zahoory@lw.com

                                                 Mark S. Mester (pro hac vice)
                                                 330 North Wabash Avenue, Suite 2800
                                                 Chicago, Illinois 60611
                                                 Telephone: (312) 876-7700
                                                 Facsimile: (312) 993-9767
                                                 mark.mester@lw.com

                                                 Attorneys for Defendant Apple Inc.