1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8

Case No.   18-cv-00147-EJD

9

IN RE APPLE PROCESSOR LITIGATION

**ORDER GRANTING MOTION TO
DISMISS WITH LEAVE TO AMEND**

10

11

Re: Dkt. No. 96

12

13          Putative class action Plaintiffs ("Plaintiffs") are purchasers or lessors of certain Apple

14   products ("iDevices"), each containing a processor that Plaintiffs allege suffers from a design

15   defect that allows unauthorized third parties to access sensitive user data.  Plaintiffs bring this

16   lawsuit against Defendant Apple Inc. ("Apple"), alleging that they paid more for their iDevices

17   than they were worth because Apple knowingly omitted the defect; the value of Plaintiffs'

18   products has diminished; and Apple's attempts to mitigate the defects with patches through

19   software updates materially slowed down the performance of their iDevices.

20          Apple has filed a renewed motion to dismiss ("Mot.") Plaintiffs' second consolidated

21   amended complaint ("SCAC") with prejudice under Federal Rule of Civil Procedure 12(b)(6) for

22   inadequate pleading of their misrepresentation, omission, restitution, and injunctive relief claims.

23   **I.      BACKGROUND[1]**

24             **a.   The Parties**

25          Plaintiffs are Jennifer Abrams (CA), Anthony Bartling (NH), Robert Giraldi (NY), and

26

27   _____
     [1] The background is a summary of the allegations in the SCAC and does not rely on any exhibits
     that Apple has "referenced for background."  Mot. 3 n.2.

28   Case No.: 18-cv-00147-EJD
     ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
                                          1

1   Jacqueline Olson (NY) ("Plaintiffs") who, on behalf of themselves and all others similarly

2   situated, allege that certain Apple products such as iPhones, iPads, and the Apple TV (collectively

3   "iDevices") all contain a central processing unit that is defective.  SCAC ¶ 1.

4        Plaintiffs bring their class action pursuant to Federal Rule of Civil Procedure 23 and seek

5   to represent a class that consists of:

6        All persons in the United States who purchased or leased from Apple
         and/or its authorized retailer sellers one or more iPhones, iPads, Apple
7        TVs, or other products containing processors designed or modified by
         Apple, at any time since January 1, 2010.

8

9   *Id*. ¶ 115.  Plaintiffs also seek to represent three subclasses: the "California Subclass," the "New

10  Hampshire Subclass," and the "New York Subclass."  *Id*. ¶ 117.  These classes are comprised of

11  members who purchased such iDevices within their respected states.  *Id*.

12       Defendant Apple, Inc. is a business incorporated in Delaware with a principal place of

13  business in Cupertino, California.  Apple designs, manufactures, distributes, and sells products

14  including the iDevices and other computing devices that contain processors.  *Id*. ¶ 18.

15            **b.  The Alleged Defect**

16       Each of Plaintiffs' iDevices contains a central processing unit, also referred to as a

17  processor ("CPU" or "Processor") that carries out the instructions of programs running on the

18  iDevices.  SCAC ¶ 24.  These Processors are based on architecture licensed from engineering firm

19  ARM Holdings but are uniquely modified and designed by Apple.  *Id*. ¶¶ 43-45.  As relevant here,

20  Apple customizes its Processors using two optimization techniques to improve performance:

21  "speculative execution," which allows processors to anticipate and execute certain tasks

22  preemptively; and "out-of-order execution," which allows a program's instructions to be executed

23  in parallel or out of order, as opposed to strictly sequentially.  *Id*. ¶ 30-31.  These optimization

24  techniques require specific modifications at the physical hardware level of each Processor.  *Id.* ¶

25  52.  Apple's Processors are used exclusively in Apple products, and the Processor within each

26  iDevice works with Apple's operating system ("iOS") to execute the device's programs and

27  instructions.  *Id*. ¶¶ 24-25, ¶ 48.

28  Case No.: 18-cv-00147-EJD
    ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

*United States District Court*
*Northern District of California*

2

1
2
3
4
5
6
7
8
9

In 2017, independent security researchers discovered that certain processors contain two vulnerabilities—referred to by Plaintiffs as "Meltdown" and "Spectre," and collectively as the "Defects"—that allow unauthorized third parties to access sensitive user data. *Id.* ¶ 2. Specifically, Apple's implementation of speculative and out-of-order execution allegedly allows bad actors to access sensitive data that would normally need to process through security checks or require isolation within the OS. *Id.* ¶¶ 36-42, 49-51. The security issues raised by Meltdown and Spectre are not limited to only Apple Processors but may affect different manufacturers' processors differently, depending on how they had modified the original ARM processor architecture. *Id.* ¶¶ 49-51.

Plaintiffs allege that Apple was notified of the Defects in June 2017 but did not publicly disclose them until January 4, 2018, after a New York Times article leaked the vulnerabilities. *Id.* ¶¶ 83-84. In that public announcement—which was made ahead of a coordinated disclosure date previously agreed upon by Apple, Intel, Google, Microsoft, Amazon, AMD, and ARM—Apple addressed speculative execution and Meltdown, disclosing that its December 2, 2017 iOS 11.2 update included a software update to address the vulnerability. *Id.* ¶ 54. On January 8, 2018, Apple separately released iOS 11.2.2, a software update to address Spectre. *Id.* Plaintiffs assert that these vulnerabilities are material because, "had they known data stored on their systems would be compromised and made available to unauthorized third parties," they would not have purchased their iDevices or paid the price they did. *Id.* ¶ 68. After Apple made the announcements, the iDevices allegedly declined in value. *Id.* ¶¶ 71–79.

### c. Apple's Representations of Its Processors

Plaintiffs allege that Apple made various representations to the public through "extensive and long-term advertising and promotion efforts" regarding the benefits, capabilities, and quality of Apple Processors and iDevices. SCAC ¶ 86. The SCAC identified various statements from Apple advertising iPhones 4, 5, 5s, 6, 6 Plus, 6s, 6s Plus, 7, 7 Plus, 8, 8 Plus, X, as well as various generations of iPads. *Id.* ¶¶ 87-112. These statements included the following assertions regarding the performance of Apple Processors:

Case No.: 18-cv-00147-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
3

- A4 Processor: "provides exceptional processor and graphic performance along with long battery life" (*Id.* ¶ 87);

- A6 Processor: "maximize performance and power efficiency . . . up to twice the CPU and graphics performance" (*Id.* ¶ 89);

- A6X Processor: "delivers up to twice the CPU performance and up to twice the graphics performance of the A5X chip" (*Id.* ¶ 102);

- A7 Processor: "brings 64-bit desktop-class architecture to a smartphone . . . up to twice the CPU and graphics performance" (*Id.* ¶ 90);

- A8 Processor: "faster performance and is more energy efficient, delivering higher sustained performance with great battery life" (*Id.* ¶ 91);

- A8X Processor: "delivers a 40 percent improvement in CPU performance and 2.5 times the graphics performance of iPad Air" (*Id.* ¶ 104);

- A9 Processor: "70 percent faster CPU and 90 percent faster GPU performance than the A8, all with gains in energy efficiency for great battery life" (*Id.* ¶ 92);

- A10 Fusion Processor: "run[s] up to two times faster than iPhone 6. . . [and is] capable of running at just one-fifth the power of the high-performance cores. Graphics performance is also more powerful, running up to three times faster than iPhone 6 at as little as half the power" (*Id.* ¶ 93);

- A10X Fusion Processor: "up to 30 percent faster CPU performance and 40 percent graphics performance than the industry-leading A9X chip" (*Id.* ¶¶ 108-09); and

- A11 Bionic Processor: "features a six-core CPU design with two performance cores that are 25 percent faster and four efficiency cores that are 70 percent faster than the A10 Fusion . . . delivering up to 70 percent greater performance for multi-threaded workloads . . . up to 30 percent faster graphics performance than the previous generation" (*Id.* ¶ 95).

Additionally, Plaintiffs identified two video commercials on YouTube that depict the iPhone as being more secure and private than other phones, which included the following

statements in the videos' YouTube descriptions:

- "Access to the latest updates keeps your iPhone secure.  Life's easier when you switch to iPhone." (*Id.* ¶ 111); and

- "We build iPhone with your privacy in mind.  Life's easier when you switch to iPhone."  (*Id.* ¶ 112).

### d.  Procedural History

On June 8, 2018, Plaintiffs filed a consolidated amended complaint against Apple alleging sixteen causes of action.  ECF No. 46.  On August 7, 2018, Apple filed a motion to dismiss, which the Court granted on standing grounds with leave to amend.  ECF Nos. 49, 66.  On February 21, 2019, Plaintiffs filed the Second Consolidated Amended Complaint, asserting seven causes of action.  ECF No. 72.  Apple again moved to dismiss Plaintiffs' SCAC for lack of standing or any cause of action, which the Court granted again on standing grounds without leave to amend and entered judgment in favor of Apple.  ECF Nos. 75, 88-89.

On appeal, a Ninth Circuit panel held that Plaintiffs had sufficiently pled standing but expressly declined to address Apple's Rule 12(b)(6) arguments, leaving that task to this Court in the first instance.  ECF No. 93.  On remand, the parties stipulated to renewed and updated briefing on Apple's 12(b)(6) defenses, ECF No. 95, which is presently before the Court.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face."  *Id.* at 555, 570.  A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal of a claim under Rule 12(b)(6) may be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

United States District Court
Northern District of California

Case No.: 18-cv-00147-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

5

1   F.2d 696, 699 (9th Cir. 1988) (internal citation omitted); *see Ministerio Roca Solida v. McKelvey*,

2   820 F.3d 1090, 1096 (9th Cir. 2016).

3         Claims that sound in fraud are further subject to a heightened pleading standard.  Fed. R.

4   Civ. Proc. 9(b) ("In alleging fraud or mistake, a party must state with particularity the

5   circumstances constituting fraud or mistake."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

6   1103–04 (9th Cir. 2003) (recognizing that claims "grounded in fraud" or which "sound in fraud"

7   must meet the Rule 9(b) pleading standard, even if fraud is not an element of the claim).  The

8   allegations must be "specific enough to give defendants notice of the particular misconduct which

9   is alleged to constitute the fraud charged so that they can defend against the charge and not just

10  deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

11  1985).  This requires an account of the "time, place, and specific content of the false

12  representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG*

13  *LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc*., 356 F.3d 1058,

14  1066 (9th Cir. 2004)).  In other words, fraud or claims asserting fraudulent conduct must generally

15  contain more specific facts than is necessary to support other causes of action.  That said, with

16  respect to omissions-based fraud claims, "the pleading standard is lowered on account of the

17  reduced ability in an omission suit 'to specify the time, place, and specific content, relative to a

18  claim involving affirmative misrepresentations.'"  *Barrett v. Apple Inc.*, 2021 WL 827235, at *7

19  (N.D. Cal. Mar. 4, 2021) (quoting *In re Apple & AT&T Mobility Antitrust Litig.*, 596 F. Supp. 2d

20  1288, 1310 (N.D. Cal. 2008)).

21        At the motion to dismiss stage, the Court must read and construe the complaint in the light

22  most favorable to the non-moving party.  *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337–38 (9th

23  Cir. 1996).  Additionally, the Court must accept as true all "well-pleaded factual allegations."

24  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  However, "courts are not bound to accept as true a

25  legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.  Nor is a complaint

26  sufficient if it merely "tenders naked assertions devoid of further factual enhancement."  *Iqbal*,

27  556 U.S. at 678 (internal quotation marks omitted).  "In all cases, evaluating a complaint's

28  

United States District Court
Northern District of California

plausibility is a 'context-specific' endeavor that requires courts to draw on . . . judicial experience and common sense." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).  When deciding whether to grant a motion to dismiss, the Court generally "may not consider any material beyond the pleadings."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  However, the Court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice.[2]  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (holding the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

In the event that a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  Leave to amend may also be denied if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.    DISCUSSION

Plaintiffs bring seven counts against Apple in the SCAC, asserting causes of action arising from California, New York, New Hampshire, and common law.  Plaintiffs' Counts I, III, IV, V, and VII allege violations of the California Consumers Legal Remedies Act ("CLRA"), the New Hampshire Consumer Protection Act ("NHCPA"), two sections of the New York General Business Law ("GBL"), and common law fraud, respectively.  Because these claims are all grounded in the same unified course of fraudulent conduct, *see* SCAC ¶¶ 134-137, 150-155, 158-

---

[2] Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record but may not take judicial notice of a fact that is subject to reasonable dispute.  Fed. R. Evid. 201(b).  Here, the Court declines to take judicial notice of Apple's Exhibits A – I, ECF No. 97, because they were not required to reach its conclusions in this Order.

Case No.: 18-cv-00147-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

161, 163-166, 174-178, the Court will refer to these five Counts collectively as Plaintiffs' "Fraud Claims" and apply Rule 9(b)'s heightened pleading requirements to all five Counts.[3]

Plaintiffs also seek equitable restitution under Cal. Bus. & Prof. Code § 17200 ("UCL") as Count II and for unjust enrichment as Count VI. SCAC ¶¶ 147, 167-172. Additionally, Plaintiffs seek injunctive relief for their CLRA and UCL claims for Apple to be "permanently enjoined and restrained from continuing and maintaining the violations alleged herein." SCAC ¶¶ 137, 147; *see also* SCAC at 41.

### a. Fraud Claims

Plaintiffs assert fraud-based claims under the CLRA, the New York GBL, and the NHCPA, the elements of which are set forth below. SCAC ¶¶ 128-178. These theories of fraud are based on both affirmative misrepresentation and material omissions. *Id.* ¶¶ 86, 173-178.

The CLRA prohibits an enumerated list of unfair or deceptive business practices that may not be undertaken in a sale or lease of goods. Cal. Civ. Code § 1770(a). Plaintiffs allege that Apple violated two of these prohibited practices: § 1770(a)(5) ("[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have") and § 1770(a)(7) ("[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"). SCAC ¶¶ 134-35. "Three elements are necessary to state a claim under the CLRA: misrepresentation, reliance, and damages." *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 977 (N.D. Cal. 2016).

New York GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," and § 350 specifically prohibits false advertising. N.Y. Gen. Bus. Law §§ 349, 350. To state a GBL claim, a plaintiff must allege "(1) the act or practice was

---

[3] Plaintiffs' Opposition sets out each statutory claim in separate sections but presents largely the same arguments and factual bases for each claim, usually in one or two paragraphs. *See* Opp. 18-22. The only distinction among the various statutory fraud claims is the observation that the NHCPA only requires an "overall misleading impression" from a defendant's representations, even if each representation may be read as literally true. Opp. 21-22, citing *Beer v. Bennett*, 160 N.H. 166, 170, 993 A.2d 765, 768 (2010).

Case No.: 18-cv-00147-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the

2    plaintiff was injured as a result." *Gold v. Lumber Liquidators, Inc.*, No. 14-CV-05373-TEH, 2015

3    WL 7888906, at *11 (N.D. Cal. Nov. 30, 2015) (citing *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74

4    (2d Cir. 2009)).

5         The NHCPA broadly prohibits the use of "any unfair or deceptive act or practice in the

6    conduct of any trade or commerce," and provides a non-exhaustive list of deceptive practices.

7    N.H. Rev. Stat. Ann. § 358-A:2.  The SCAC alleges violations specifically of § 358-A:2(VII),

8    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods

9    are of a particular style or model, if they are of another," the language of which largely resembles

10   § 1770(a)(7) of the CLRA.  SCAC ¶ 149.  The Supreme Court of New Hampshire has also held

11   that, even if any individual representation could be read as literally true, an advertisement could

12   still violate the NHCPA if "it created an overall misleading impression." *Beer v. Bennett*, 160

13   N.H. 166, 170 (2010).

14        Apple argues that, with respect to all of Plaintiffs' Fraud Claims, the SCAC fails to allege

15   at least three necessary elements: an actionable misrepresentation (either made affirmatively or by

16   omission), reliance, and damages.  Mot. 7.  As discussed further below, the Court finds that

17   Plaintiffs have failed to allege an affirmative misrepresentation, an actionable omission, and actual

18   reliance, so the Court does not reach Apple's arguments on damages.

19                        **i.  Affirmative Misrepresentation**

20        Plaintiffs claim that Apple made affirmative representations regarding (1) the privacy and

21   security of iPhones, and (2) the speed and performance of its Processors.  Opp. 16.  Apple argues

22   that Plaintiffs' affirmative misrepresentation theory fails on two fronts: first, Plaintiffs' alleged

23   misrepresentations are too general to be actionable; and second, Plaintiffs have failed to allege that

24   any specific representation was false.  Mot. 7-9.

25        To satisfy Rule 9(b), a pleading alleging fraud must identify "the who, what, when, where,

26   and how of the misconduct charged," as well as "what is false or misleading about [the

27   purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4*

1   *Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  Affirmative statements are only actionable under

2   the CLRA if they are "likely to deceive a reasonable consumer.  Advertisements that amount to

3   mere puffery are not actionable because no reasonable consumer relies on puffery."  *Stickrath v.*

4   *Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) (internal citations and quotation

5   marks omitted).  For example, statements generally claiming that one product is superior are not

6   actionable, but misdescriptions of specific or absolute characteristics of a product are actionable.

7   *See Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1133 (N.D. Cal. 2013) (quoting *Cook,*

8   *Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir.1990)).

9          With respect to privacy and security representations, Plaintiffs claim that Apple advertises

10   iPhones as "secure" and built "with your privacy in mind," which was misleading given the

11   devices' vulnerability to Spectre and Meltdown.  Opp. 16, citing SCAC ¶¶ 111-12.  However,

12   these representations do not speak to any specific or absolute characteristics about the iPhones'

13   security and are the type of statements that many courts have held to be non-actionable puffery.

14   *See, e.g.*, *Elias*, 950 F. Supp. 2d at 1132 (holding that generalized advertisements that a computer

15   is "ultra-reliable" or "packed with power" are non-actionable because they "say nothing about the

16   specific characteristics or components of the computer"); *cf. Cook, Perkiss & Liehe, Inc. v. N.*

17   *California Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (finding statements that lamps

18   are "far brighter than any lamp ever before offered for home movies" are non-actionable but

19   statements that lamps had "35,000 candle power and 10-hour life" were actionable).  Plaintiffs rely

20   primarily on Apple's statement in a commercial that it builds iPhones "with your privacy in

21   mind," but does not explain how a reasonable consumer would view this statement as "as anything

22   more weighty than an advertising slogan."  *Consumer Advocs. v. Echostar Satellite Corp.*, 113

23   Cal. App. 4th 1351, 1361, 8 Cal. Rptr. 3d 22, 29 (2003).  Even assuming that this statement could

24   be interpreted literally to imply that Apple employees were designing iPhones with special

25   contemplation of consumer privacy, Plaintiffs have not shown how this implication would be

26   false, *i.e.*, that Apple employees did not indeed design iPhones with privacy considerations.  To

27   the extent Plaintiffs rely on the existence of the Spectre and Meltdown vulnerabilities to establish

28   Case No.: 18-cv-00147-EJD

United States District Court
Northern District of California

1   that these statements were false, they have alleged that Apple only learned of these Defects in June

2   2017,[4] while the video commercial and statement at issue were posted on May 22, 2017.  SCAC

3   ¶¶ 83, 112.

4          Plaintiffs also allege that Apple advertises its Processors as faster, more powerful, and

5   having better battery life than prior generations.  These statements, Plaintiffs assert, were

6   misleading because the Processors would be significantly slower than advertised once Apple's

7   mitigation efforts were implemented.  Opp. 16, citing SCAC ¶¶ 91, 95, 97, 99-100; *see also supra*

8   I.C.  Some of these representations are "all-but-meaningless superlatives," *see Consumer Advocs*,

9   113 Cal. App. 4th at 1361, such as the A11 Bionic Processor being touted as "the most powerful

10  and smartest chip ever in a smartphone."  SCAC ¶ 95.  Again, these statements say nothing about

11  the specific characteristics or components about the Processors and are thereby too vague to be

12  actionable.  To the extent Plaintiffs argue that these performance representations are nonetheless

13  misleading because future mitigation efforts would inevitably impair device performance, *see*

14  SCAC ¶¶ 134-35, they do not identify any specific standard of performance that the Processors

15  failed to meet post-mitigation nor do they explain how Apple's performance statements were

16  "false when [] made."  *Hauck*, 2019 WL 1493356, at *5.

17         That said, some statements cited in the SCAC do include more specific and measurable

18  claims that could conceivably be actionable, namely those that assert a specific Processor is some

19  percent faster than the previous generation's Processor.  *See, e.g.*, SCAC ¶¶ 90, 92-93, 95, 102,

20  104, 108-09 (stating that the A10X Fusion Processor is "up to 30 percent faster CPU performance

21  and 40 percent graphics performance than the industry-leading A9X chip").  However, with

22

---

23  [4] Plaintiffs do attempt to impute knowledge onto Apple prior to June 2017 in a single paragraph, relying on a 1995 academic paper and an unspecified 2012 iOS update.  SCAC ¶ 5.  However,

24  these allegations fail to allege actual knowledge under the heightened pleading standard of Fed. R. Civ. P. 9(b).  *See Hauck v. Advanced Micro Devices, Inc.*, No. 18-CV-00447-LHK, 2018 WL

25  5729234, at *6 (N.D. Cal. Oct. 29, 2018) (rejecting knowledge based on "vague, sweeping statements about industry research and general knowledge garnered from conferences and

26  academic papers of the Defect's potential to exploit processors"); *Williamson v. Apple, Inc.*, No. 5:11-CV-00377 EJD, 2012 WL 3835104, at *7 (N.D. Cal. Sept. 4, 2012) (finding allegations that

27  Apple began work to correct defects based on "sources inside and outside Apple" were insufficient to allege actual knowledge under Rule 9).

28  Case No.: 18-cv-00147-EJD
    ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
    11

United States District Court
Northern District of California

respect to these more specific representations, Plaintiffs do not allege what exactly is false or misleading about them. The SCAC does not contain allegations that a specific Processor—either before or after Apple's mitigation—fails to perform better than a previous generation's nor does it contain any comparison of the performance between generations of Apple Processors, which is what Apple advertised. What the SCAC *does* allege is that the Processors perform measurably worse *after* the iOS update containing Apple's mitigation efforts was implemented, SCAC ¶¶ 62-63, but this is not what Apple represented and does not render Apple's statements regarding generation-to-generation improvements false or misleading.

Plaintiffs' citation to New Hampshire law suggesting that they can maintain a NHCPA violation for an advertisement that was literally true but "created an overall misleading impression" is also unavailing. *See* Opp. 21-22, citing *Beer v. Bennett*, 160 N.H. 166, 170 (2010). Plaintiffs do not attempt to apply this as a separate standard to Apple's statements here nor do they analogize the facts in this case with those in *Beer*, which involved an inoperable car that was nonetheless advertised to have a motor with "pretty vigorous performance." *Id.* at 168. Plaintiffs primarily rely on the same body of arguments and allegations made in their UCL, CLRA, and GBL claims. Opp. 21-22. For the reasons mentioned throughout this Order as to why those other fraud-based claims fail, Plaintiffs have also failed to state a claim under the NHCPA.

Because Plaintiffs are unable to identify any statement from Apple that is both sufficiently specific to be actionable and was false when made, Plaintiffs have failed to state a claim for fraud under an affirmative misrepresentation theory.

### ii. Omission

Plaintiffs also advance an omissions-based theory of fraud, alleging that Apple "failed to disclose that the Apple Processors contained in the iDevices suffered from the Defects, the nature of the Defects, that efforts to mitigate the Defects would cause impaired performance of the iDevices, and that the Defects cannot be fully repaired without impairing performance of the iDevices." SCAC ¶ 174; *see also* Opp. 8-15. The SCAC defines "Defects" to mean the category of vulnerabilities collectively referred to as Meltdown and Spectre. SCAC ¶ 2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"Omissions may be the basis of claims under California consumer protections laws, but to be actionable the omission must be . . . of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (citing *Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824, 51 Cal.Rptr.3d 118, 126 (2006)) (internal quotation marks omitted).  Here, the parties disagree as to the controlling Ninth Circuit standard for when a disclosure duty may arise. Mot. 10-11; Opp. 7-8.  Apple asserts that it had no duty to disclose, absent an "unreasonable safety hazard," which Plaintiffs indisputably did not allege.  Mot. 10; *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1143 (9th Cir. 2012).  Plaintiffs argue that, in addition to circumstances involving safety hazards, manufacturers are also liable for omissions where: (1) the omission was material; (2) the defect was "central to the product's function"; and (3) the manufacturer either had "exclusive knowledge" of material facts, "actively conceal[ed]" a material fact from the plaintiff, or made "partial misrepresentations that are misleading" (the *LiMandri* factors).  Opp. 8; *Hodsdon*, 891 F.3d at 863; *see also LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).

It is worth noting that *Hodsdon*—the Ninth Circuit decision on which Plaintiffs rely—did not specify whether the "central functionality" analysis conferring a duty to disclose defects would apply even *after* a limited warranty has expired.  *See Taleshpour v. Apple Inc.*, 549 F. Supp. 3d 1033, 1043 (N.D. Cal. 2021) ("[T]he Ninth Circuit [in *Hodsdon*] does not appear to have directly addressed the question of whether a duty to disclose exists when the alleged defect arises only after a limited warranty period expires"), aff'd sub nom. Mahan Taleshpour, et al., Plaintiffs-Appellants, v. Apple, Inc., Defendant-Appellee., No. 21-16282, 2022 WL 1577802 (9th Cir. May 19, 2022); *cf. Wilson*, 668 F.3d at 1141 (citing policy considerations to limit the disclosure duty because "to broaden the duty to disclose beyond safety concerns would eliminate term limits on warranties, effectively making them perpetual or at least for the useful life of the product.") (internal quotation marks omitted).  *Hodsdon* even expressly remarked on this distinction when summarizing the state court decisions on which it relied for its "central function" analysis, as both cases had involved defects that arose *during* the warranty period.  *See Hodsdon*, 891 F.3d at 863 ("*Rutledge*, therefore, could be read as a case that stands for any of the following propositions: . . .

United States District Court
Northern District of California

1
2
3
4
5
6

(2) there is a duty to disclose defects that go to the central function of the product; or (3) there is a duty to disclose defects that go to the central function of the product **and which arise during the warranty period**.") (emphasis added).  However, the Court here—much like the Ninth Circuit in *Hodsdon*—need not definitively answer this question of California law to resolve the present matter.  Even if Plaintiffs had specified that the Defects arose during their warranty periods, they have failed to allege facts that show the Defects were central to the iDevices' function.

7

### 1.  Central Function

8
9
10
11
12
13
14
15
16
17
18
19
20
21

Under the framework distilled in *Hodsdon*, Plaintiffs are required to plead that "the allegedly concealed *physical* defect was *central* to the product's function."  *Hodsdon*, 891 F.3d at 864 (emphasis in original).  The alleged central functionality of a defect cannot be based on subjective preferences about a product.  *Id.*  As an example, the Ninth Circuit compares a "computer chip that corrupts the hard drive, or a laptop screen that goes dark, render[ing] those products incapable of use by any consumer" with certain consumers' preferences regarding "the labor practices used to manufacture the product."  *Id.*  There have been some dispute as to whether the "central function" analysis requires the defect to render the product incapable of use by any consumer or whether the defect need only prevent or seriously impair the full use of the product.  *Compare Knowles v. Arris Int'l PLC*, No. 17-CV-01834-LHK, 2019 WL 3934781, at *16 (N.D. Cal. Aug. 20, 2019), aff'd, 847 F. App'x 512 (9th Cir. 2021) (finding no centrality where latency defects slowed down performance but did not render a modem unusable), *with In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2019 WL 1765817, at *5 (N.D. Cal. Apr. 22, 2019) (finding centrality where defect caused some keys on a laptop keyboard to become inoperable).

22
23
24
25
26
27

In evaluating the centrality of a defect, courts in this District have found that security vulnerabilities are central defects for network security products, *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 980 (N.D. Cal. 2018); defects affecting speed and performance are central to a smartphone's central function, *Norcia v. Samsung Telecommunications Am., LLC*, No. 14-CV-00582-JD, 2018 WL 4772302, at *2 (N.D. Cal. Oct. 1, 2018); and cellular and wireless connectivity defects are also central to a smartphone, *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993,

28

Case No.: 18-cv-00147-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

1   1017 (N.D. Cal. 2020).  Contrarily, courts have also found that "dark smudges in the corners of a

2   screen" are not central to a computer's function, *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 568

3   (N.D. Cal. 2019); and refundability terms are not central to a social video game, *C.W. v. Epic

4   Games, Inc.*, No. 19-CV-03629-YGR, 2020 WL 5257572, at *5 (N.D. Cal. Sept. 3, 2020), motion

5   to certify appeal denied, No. 19-CV-03629-YGR, 2020 WL 6064422 (N.D. Cal. Oct. 14, 2020).

6          Most notably and relevant here, the District of Oregon—in reviewing a CLRA omissions

7   claim based on similar allegations against Intel processors regarding the Spectre and Meltdown

8   defects—held that security vulnerabilities are *not* central to a processor's function.  *In re Intel

9   Corp. CPU Mktg., Sales Pracs. & Prod. Liab. Litig.* ("*Intel*"), No. 3:18-MD-2828-SI, 2021 WL

10  1198299, at *8 (D. Or. Mar. 29, 2021).  In so holding, Judge Simon distinguished the alleged

11  *security* vulnerabilities from the processors' central function, which is to *process* and be the

12  "brains" of the devices in which they are placed.  *Id.*  Judge Simon also found it relevant that the

13  plaintiffs had not alleged that Intel processors—with defects that supposedly impaired their central

14  functions—had "ever corrupted a hard drive, destroyed data, caused a computer to freeze or stop

15  functioning in a meaningful way."  *Id.*  In fact, even after the vulnerabilities were publicly exposed

16  in 2018, affected processors continued to be bought and used by consumers without any alleged

17  security breaches as a result of the defects.  *Id.*

18         The Court agrees with Judge Simon's reasoning in *Intel* that a processor's central function

19  is to process, which is not necessarily affected by security vulnerabilities.  *See Intel*, 2021 WL

20  1198299, at *8 (finding that Intel chips "are processing and acting as the 'brains' of the

21  computer"); *see also* SCAC ¶ 160 (noting that Apple Processors "contained a critical **security**

22  defect") (emphasis added).  Plaintiffs attempt to maneuver around this point by arguing that the

23  Spectre and Meltdown Defects are central to the iDevices' function "as a result of the **central role**

24  the Processor plays in all device operations."  Opp. 10 (emphasis added).  This argument

25  misapprehends what needs to be central under *Hodsdon*.  Plaintiffs are asserting that the affected

26  *component* (*i.e.*, the Processor) is central to the product's function, but the standard as set forth in

27  *Hodsdon* requires that the *defect* be central to the product's function.  *See Hodsdon*, 891 F.3d at

28  Case No.: 18-cv-00147-EJD
    ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

*United States District Court*
*Northern District of California*

1    864.  This distinction is slight but exemplified in cases such as this one, where the Defects impact

2    a central component to the product without necessarily affecting the product's function.

3    Moreover, the SCAC does not contain any allegations that either Spectre or Meltdown affected the

4    ability of Apple Processors to process, for example by slowing down performance, interfering

5    with speculative or out-of-order execution processes, or crashing the iDevices.  Indeed, the

6    optimization that gave rise to these vulnerabilities were designed to *improve* the Processor's

7    central functions.  SCAC ¶¶ 30-35.  Accordingly, the Court finds that the Spectre and Meltdown

8    Defects alleged in the SCAC are not central to the Processors' function of processing, and

9    therefore, Apple did not have a duty to disclose the existence of the Defects.

10        In arguing the "central function" point, Plaintiffs appear to conflate the impacts of Apple's

11   mitigation efforts—which *are* alleged to affect a central function of the iDevices—with the

12   impacts of the Defects themselves.  Opp. 10-12.  First, it is unclear if Plaintiffs are arguing that

13   Apple should have disclosed some fact pertaining to future mitigating iOS updates at the time of

14   Plaintiffs' purchases and, if so, what facts should have been disclosed.[5]  Second, even if Plaintiffs

15   are asserting that Apple omitted information regarding its iOS updates, Apple only has a duty to

16   disclose *physical* defects.  *See Hodsdon*, 891 F.3d at 864 ("In *Collins* and *Rutledge*, the plaintiffs

17   were required to plead that the allegedly concealed *physical* defect was *central* to the product's

18   function.") (italics in original).  Although speed and performance are central to a Processor's

19   function, Plaintiffs do not argue or allege that the iOS updates constitute physical defects giving

20   rise to a duty to disclose.  In fact, Plaintiffs have admitted that Apple's mitigation efforts are

21   *software* patches, as distinguished from the Processor's physical hardware.  Opp. 6 ("Apple

22   attempted to address the defects by releasing software 'patches' to its OS's that would limit their

23

24   _____

25   [5] Although the SCAC states in conclusory fashion that "Apple intentionally failed to disclose . . .
     that efforts to mitigate the Defects would cause impaired performance of the iDevices," SCAC ¶
26   174, the SCAC also admits that Apple did make at least one disclosure that iOS 11.2.2 resulted in
     a "measurable performance impact of less than 2.5%."  SCAC ¶ 58.  Plaintiffs' Opposition brief
27   also does not help clarify whether they are asserting that Apple had a duty to disclose something
     further as to its mitigation efforts.  *See* Opp. 8 ("Apple Was Obliged To Disclose The Existence
28   Of The Defect.").

Case No.: 18-cv-00147-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

United States District Court
Northern District of California

1  exploitability. . . . Apple's mitigation efforts instructed the Processors to eliminate some of the

2  shortcuts that they previously utilized to achieve enhanced speed and performance."); *see also*

3  SCAC ¶ 56-57 ("Apple attempted to mitigate the Meltdown and Spectre defects . . . by modifying

4  the way that iOS handles memory").  Finally, Apple's iOS updates may not even be properly

5  considered a "defect" in the first instance, as the SCAC does not define "Defects" to include iOS

6  updates or Apple's efforts to mitigate the Spectre and Meltdown vulnerabilities.  SCAC ¶ 2

7  ("independent security researchers found that Apple Processors suffered from several design

8  defects—collectively called 'Meltdown' and 'Spectre' (the 'Defects'). . . .").  Plaintiffs have thus

9  failed to allege that Apple had a duty to disclose any performance-reducing effects of the

10  remediating iOS updates, if those updates can even be construed as "defects."

11       Because Plaintiffs have not alleged that Apple omitted a physical defect that is central to

12  the Processors' or iDevices' function, the Court does not reach the issues of whether any omitted

13  fact was material or whether Plaintiffs satisfied any of the *LiMandri* factors.  *See Hodsdon*, 891

14  F.3d at 863.

15              **iii.   Reliance**

16       Plaintiffs have failed to state a claim for fraud under either an affirmative

17  misrepresentations theory or an omissions theory, and their Fraud Claims may be dismissed on

18  those grounds alone.  However, the Court notes that Plaintiffs have also failed to adequately plead

19  actual reliance on their theories of Apple's affirmative statements or omissions.

20       The Supreme Court of California held in the *Tobacco II Cases* that where "a plaintiff

21  alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an

22  unrealistic degree of specificity that the plaintiff relied on particular advertisements or

23  statements."  *In re Tobacco II Cases* ("*Tobacco II*"), 46 Cal. 4th 298, 328 (2009).  Plaintiffs

24  accordingly assert that they have sufficiently pled reliance by identifying misrepresentations that

25  Apple made in connection with "extensive and long-term advertising and promotion efforts" and

26  alleging that they were exposed to that marketing during the Class Period.  Opp. 17.  The SCAC

27  does indeed plead the details of Apple's advertising campaign with some particularity, SCAC ¶¶

28  Case No.: 18-cv-00147-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

86-114, which *Tobacco II* indicates would excuse Plaintiffs from pleading their individual reliance on a specific advertisement from that campaign.  *See Tobacco II*, 46 Cal. 4th at 328.  However, Plaintiffs have not pled that they *actually relied* on the campaign, a requirement that *Tobacco II* expressly preserved; they have only pled in conclusory fashion that they were *exposed* to said marketing campaign.  *See Tobacco II*, 46 Cal. 4th at 328 ("Accordingly, we conclude that a plaintiff must plead and prove actual reliance. . . ."); *see also Yastrab*, 173 F. Supp. 3d at 980 (noting that most cases from this district interpret *Tobacco II* to "merely provide[] that to establish UCL standing, reliance need not be proved through exposure to particular advertisements").  Even if they need not allege that they specifically viewed and relied on one of the press releases or statements cited at SCAC ¶¶ 87-112, Plaintiffs must at least allege that they relied on the marketing campaign itself.  The *Opperman* decision that Plaintiffs cite from this District does not relieve them of this obligation—indeed, even there, Judge Tigar had required the plaintiffs to "plead with particularity, and separately, when and how they were exposed to the advertising campaign."  *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 981-82 (N.D. Cal. 2015) (Tigar, J.).  Here, the SCAC's conclusory assertion that Plaintiffs "were exposed to Apple's marketing of its iDevices" is not supported by any factual allegations that Plaintiff had viewed *any* portion of Apple's campaign prior to their respective iDevice purchases.  This is insufficient to establish with particularity that Plaintiffs actually relied on Apple's marketing campaign.

With respect to omissions, the Supreme Court of California has held that plaintiffs may plead reliance by showing "had the omitted information been disclosed, one would have been aware of it *and* behaved differently."  *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993) (emphasis added).  Here, Plaintiffs correctly quote this standard but then only plead the latter half, *i.e.*, that "had they known of concealed facts, they would not have purchased the iDevices or would have paid less for the iDevices."  Opp. 15.  The SCAC does not allege any facts from which the Court can reasonably infer that Plaintiffs *would have* been aware of disclosed information if Apple had disclosed them.  For instance, Plaintiffs do not allege that they regularly view Apple's YouTube videos or follow Apple's press releases, much less relied on any such representations

1    when purchasing their next smartphone or tablet.  The Court notes the absences of these

2    hypothetical allegations, not to suggest that Plaintiffs must have viewed a specific YouTube video

3    or press release, but rather to highlight that Plaintiffs have failed to provide "an opportunity to

4    receive and therefore rely on the omitted information."  *Sloan v. Gen. Motors LLC*, 287 F. Supp.

5    3d 840, 875 (N.D. Cal. 2018), order clarified, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018), and on

6    reconsideration, 438 F. Supp. 3d 1017 (N.D. Cal. 2020); *cf. Opperman*, 84 F. Supp. 3d at 978

7    (finding sufficient reliance where plaintiffs "viewed, heard, read Apple's advertisements, or

8    statements in news reports, articles, blogs, and/or statements by Apple's former CEO, Stephen

9    Jobs; attended Apple conferences, presentations or product-release events; and/or received emails

10   or other communications from Apple touting its devices' security and/or its respect for its

11   customers' privacy").  Once again, the most that Plaintiffs have alleged here is that they were

12   "exposed to Apple's marketing of its iDevices during the Class Period," SCAC ¶ 86, which is too

13   conclusory to satisfy Plaintiffs' obligations under Rule 9(b) and is insufficient to show that they

14   would have been aware of and could have relied on any omitted information.

15          Accordingly, even if the SCAC were to have alleged an actionable misrepresentation or

16   omission, Plaintiffs' fraud claims would still be deficient for failure to plead with particularity

17   actual reliance on said misrepresentation or omission.

18          Because Plaintiffs have failed to plead an actionable misrepresentation, omission, or actual

19   reliance, the Court will grant Apple's motion to dismiss Plaintiffs' Fraud Claims, *i.e.*, Counts I,

20   III, IV, V, and VII.  Although this is the third motion to dismiss that the Court has granted, the

21   previous orders did not address the substantive sufficiency of Plaintiffs' claims, and the Court

22   cannot determine that the presently identified deficiencies are incurable.  *See DeSoto*, 957 F.2d at

23   658.  Accordingly, the Court will grant Plaintiffs leave to amend the SCAC as to these Counts.

24          **b.  Equitable Relief Claims**

25          In addition to the Fraud Claims, the SCAC asserts two other claims for equitable relief: a

26   UCL claim for restitution and injunctive relief (Count II) and a common law unjust enrichment

27   claim for restitution (Court VI).  SCAC ¶¶ 139-147, 167-172.  With respect to their unjust

28   Case No.: 18-cv-00147-EJD
     ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1   enrichment claim, Plaintiffs "seek appropriate monetary relief" and "the establishment of a

2   constructive trust, in a sum certain, of all monies charged and collected." *Id.* ¶ 172.  Regarding

3   injunctive relief, Plaintiffs have pled that they are entitled to injunctive relief and seek "[t]hat

4   Defendant be permanently enjoined and restrained from continuing and maintaining the violations

5   alleged" but do not otherwise specify what kind of injunction they are seeking.  *Id.* ¶¶ 137, 147;

6   *see also id.* at 41.

7                                  **i.   Unjust Enrichment**

8          Plaintiffs asserting equitable claims in federal court must abide by "traditional principles

9   governing equitable remedies in federal courts," including the requirement that they first establish

10  a lack of adequate remedy at law before securing equitable relief.  *Sonner v. Premier Nutrition*

11  *Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (citing *Mort v. United States*, 86 F.3d 890, 892 (9th Cir.

12  1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act ... when

13  the moving party has an adequate remedy at law." (ellipsis in original)).

14         Apple argues that Plaintiffs have failed to state a basis for equitable relief because they

15  have not pled an inadequate remedy at law.  Opp. 19-20.  Plaintiffs' arguments and cited case

16  law—indicating that equitable claims may be pled in the alternative to otherwise inconsistent legal

17  claims—do not address this point.  Opp. 22, citing Fed. R. Civ. P. 8(d)(3).  Apple does not argue

18  that Plaintiffs' equitable relief is precluded by the fact that they have also alleged legal claims;

19  rather, they argue that Plaintiffs failed to establish they are entitled to equitable relief at all,

20  specifically that the available legal remedies are inadequate.  Reply 12-13; *see also In re MacBook*

21  *Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at *2 (N.D. Cal. Oct. 13, 2020)

22  ("The question is not whether or when Plaintiffs are required to choose between two available

23  inconsistent remedies, it is whether equitable remedies are available to Plaintiffs at all.").  On this

24  topic, the SCAC has only alleged in conclusory fashion that "[o]ther remedies and claims may not

25  permit [Plaintiffs] to obtain such relief, leaving them without an adequate remedy at law," though

26  it also asserts in the immediate next paragraph that Plaintiffs are seeking "appropriate monetary

27  relief" for their unjust enrichment claim.  SCAC ¶¶ 171-72.  Plaintiffs' Opposition does not

28  Case No.: 18-cv-00147-EJD
    **ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**
                                        20

elaborate further as to why money damages or any other remedy at law would not also provide adequate relief. *See Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908 (N.D. Cal. 2021) (finding that a claim for "loss of money and/or loss in value . . . is exactly the type of injury for which legal remedies are appropriate."). The SCAC does mention and request for the establishment of a constructive trust "of all monies charged and collected or retained by Defendant." SCAC ¶ 172. However, Plaintiffs do not argue anywhere in their Opposition how this relief would "go beyond the damages available to them" or that it would be more "certain, prompt, or efficient than the legal remedies they request." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020). Accordingly, the SCAC fails to plead the facts necessary to support equitable restitution as a remedy for Plaintiffs' unjust enrichment claim (Count VI), as well as the restitution requested in their CLRA and UCL claims (Counts I, II).

Plaintiffs' unjust enrichment claim are also separately subject to dismissal on the merits. Although there is no standalone cause of action in California for "unjust enrichment," courts may "construe [a claim for unjust enrichment] as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, a restitution claim based on fraud or consumer protection claims must nonetheless be dismissed if the plaintiff fails to sufficiently plead an actionable misrepresentation or omission. *See Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) (quoting *Donohue v. Apple*, Inc., 871 F. Supp. 2d 913, 933 (N.D. Cal. 2012)). Here, Plaintiffs have alleged that they conferred a benefit on Apple by purchasing iDevices that contained defective Processors, which was unjustly retained by Apple because it knew the Processors were defective and concealed that information from Plaintiffs. SCAC ¶ 170. This formulation of Plaintiffs' unjust enrichment claim relies on the same set of allegations as Plaintiffs' Fraud Claims addressed above, namely that Apple fraudulently omitted information regarding the Defects. Because Plaintiffs have failed to sufficiently plead actionable fraud, their unjust enrichment claim relying on the same alleged fraudulent conduct must also be dismissed. *See Donohue*, 871 F. Supp. 2d at 933 ("[A]s plaintiff has failed to sufficiently plead an actionable misrepresentation or omission, his restitution claim must be dismissed."); *cf. In re Intel*

United States District Court
Northern District of California

1   *Corp. CPU Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 3:18-MD-2828-SI, 2022 WL 225304, at

2   *13 (D. Or. Jan. 26, 2022) (permitting equitable restitution claims to proceed where plaintiffs

3   relied on factual conduct that was separate and distinct from their legal claims).

4         Because of the foregoing deficiencies with Plaintiffs' unjust enrichment claim, the Court

5   will grant Apple's motion to dismiss Count VI.  As with the Fraud Claims, the Court cannot

6   conclude that these deficiencies are incurable through additional amendment.  Accordingly, it will

7   permit Plaintiffs leave to amend the SCAC as to Count VI.

8                          **ii.   UCL Claim**

9         Plaintiffs also allege that Apple violated the California UCL, which "provides only for

10  equitable remedies" and is "generally limited to injunctive relief and restitution."  *Hodge v.*

11  *Superior Ct.*, 145 Cal. App. 4th 278, 284 (2006).  Specifically, the SCAC alleges that Apple

12  engaged in unlawful, fraudulent, and unfair business acts or practices, *i.e.*, all three prongs of the

13  UCL.  SCAC ¶¶ 141-145.  The Court addresses each prong in turn.

14        With regards to the unlawful prong of the UCL, Plaintiffs rely entirely on their alleged

15  violations of the CLRA.  SCAC ¶ 141; *see also* Opp. 19-20.  Because Plaintiffs failed to state an

16  actionable misrepresentation or omission to substantiate their alleged violations of the CLRA, they

17  have also failed to state a claim under the unlawful prong of the UCL.  *See, e.g.*, *Taleshpour*, 549

18  F. Supp. 3d at 1046 (citing *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *8).

19        To plead the fraudulent prong of the UCL, Plaintiffs must allege that "members of the

20  public are likely to be deceived" based on an expectation or an assumption regarding the matter in

21  question.  *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 258–59 (2011), as modified (Dec. 28,

22  2011) (citing *Daugherty*, 144 Cal. App. 4th at 838).  In their Opposition, Plaintiffs argue that

23  consumers would expect that the iDevices sold to them "(1) did not contain the defects; and (2)

24  that attempted mitigations would not materially decrease the performance of the iDevices."  Opp.

25  20.  However, Plaintiffs do not identify what facts in the SCAC support this expectation nor do

26  they assert that there exists an expectation regarding any specific degree of security in Apple

27  Processors.  Furthermore, as discussed above, Plaintiffs have failed to allege that Apple had any

28  Case No.: 18-cv-00147-EJD
    ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

*United States District Court*
*Northern District of California*

1  duty to disclose the Spectre and Meltdown Defects, in part because the Defects were not central to

2  the iDevices' and Processors' functions.  *See supra* III(a)(ii).  Accordingly, "the failure to disclose

3  a fact one has no affirmative duty to disclose" is not "likely to deceive" anyone within the

4  meaning of the UCL.[6]  *Daugherty*, 144 Cal. App. 4th at 838.

5      Finally, Plaintiffs also claim that Apple's conduct was "unfair" under the UCL because it

6  was "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."

7  SCAC ¶ 145.  Plaintiffs' Opposition further remarks that Apple's conduct was "decidedly unfair

8  because Defendant chose to keep the information about the defects and the slowdown to itself

9  while continuing to promote and sell products to consumers unaware of the serious defects."  Opp.

10  20.  The SCAC's recitation of the "unfair" legal standard is conclusory and insufficient to state a

11  claim under the UCL "unfairness" prong.  *See, e.g.*, *Bardin*, 136 Cal. App. 4th at 1260 ("One line

12  [of cases] defines 'unfair' as prohibiting conduct that is immoral, unethical, oppressive,

13  unscrupulous or substantially injurious to consumers. . . .").  Moreover, once again, Plaintiffs'

14  argument on Opposition is duplicative of their fraud-by-omission claim and does not address any

15  of the tests California courts have developed to determine "unfairness."  *See, e.g.*, *Taleshpour*, 549

16  F. Supp. 3d at 1045 (summarizing and applying the "tethering test" and "balancing test").

17      Because Plaintiffs have failed to state a claim under any of the three UCL prongs, the

18  Court will grant Apple's motion to dismiss Count II of the SCAC pertaining to Plaintiffs' UCL

19  claim.[7]  The Court cannot determine that Plaintiffs' UCL claim would be incurable with further

20  allegations and will grant Plaintiffs leave to amend the SCAC as to Count II.

21

22  _____

23  [6] Plaintiffs' attempt to analogize the Defects here with the defect in *Collins* is unpersuasive.  Opp.
20.  The "FDC Defect" at issue in *Collins* rendered the floppy disk incapable of use by corrupting
data and "incapacitat[ing] the very function that was to correct such corruption."  *Collins*, 202 Cal.

24  App. 4th at 253.  By contrast, the Spectre and Meltdown Defects were latent and only affected the
non-central security aspects of Apple Processors.  Accordingly, these facts are more akin to those

25  in *Bardin v. DaimlerChrysler Corp.*, where a California court held that consumers do not have any
expectations as to a specific quality of materials used for their vehicles' exhaust manifolds.  *See*

26  *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006).
[7] With the dismissal of Plaintiffs' last claim for relief, the Court does not reach the issue of

27  whether Plaintiffs have sufficiently established that they are entitled to injunctive relief.  Mot. 20-
21; Opp. 23-24.

28  Case No.: 18-cv-00147-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

**IV.    CONCLUSION**

For the foregoing reasons, Apple's Motion to Dismiss Plaintiffs' Second Consolidated Amended Complaint is GRANTED.  All Counts in the SCAC are DISMISSED with LEAVE TO AMEND.  Plaintiffs may file and serve an amended complaint no later than June 30, 2022.

**IT IS SO ORDERED.**

Dated: June 8, 2022.

EDWARD J. DAVILA
United States District Judge